# MILLER v. ST. LOUIS & KANSAS CITY RAILWAY COMPANY, Appellant.

## Division One, May 14, 1901.

1. **Appellate Jurisdiction:** TITLE TO RIGHT OF WAY: REFORMATION OF CONTRACT OF PURCHASE. In a suit for damages to plaintiff's land caused by the construction of a right of way thereon, the railroad set up an answer, aimed to be a bill in equity to reform a contract so as to divest plaintiff of the land on which the track was constructed. *Held*, that the judgment in the case would directly affect title to real estate, and hence the Supreme Court has jurisdiction of the appeal.

2. **Practice:** EQUITABLE RELIEF: JURY. Although defendant may set up equitable relief in his answer, it does not follow that, the equitable issue being denied, the remaining law issues should not be submitted to a jury. The pleading of an affirmative equitable defense does not turn the entire case over to a chancery court. There must exist in the facts of the case some equity upon which a court of equity exercises its peculiar jurisdiction in granting relief. If on consideration of the equitable defense pleaded, no equity is found in it and no equitable relief therefor is granted, the court of equity will not retain the case to try the purely legal issues that may still be in it. A jury may be called to pass upon them.

3. ———: ———: ———: FINAL JUDGMENT. But there can be but one final judgment in a case under the code. So the trial court, after trying the equitable issues tendered by the answer, and finding them not sustained, should simply record its finding and withhold its judgment until the rest of the case is tried, and then pronounce judgment on the whole case. But such premature entry of judgment is not reversible error if no injury has resulted.

4. ———: ———: ———: REHEARING EVIDENCE OF EQUITABLE DEFENSE. Where the court has considered and not sustained the equitable defense contained in the answer, and ordered a jury to try the legal issues, it is error to permit the evidence concerning the equita-

Miller v. St. L. & K. C. Ry. Co.

ble defense to go to the jury, or to give any instructions concerning the same. But if a judgment, nevertheless, is rendered in behalf of the plaintiff, and he does not appeal, he can not complain that such evidence went to the jury or that such instructions were given, nor can the appellant do so, because the error was in his favor.

5. ———: ESTOPPEL: CONSTRUCTING TRACK: KNOWLEDGE: SILENCE. Where a landowner knows that a railroad track is being constructed on a right of way different from that called for by the contract, and remains silent, and the company does not know of the mistake, or if the owner in any other way so behaves as to mislead the company, he is estopped from recovering damages for injury due to the un-authorized location of the track. · But where it is not alleged that the owner knew any facts not known to the company, he is not so estopped.

6. Appellate Practice: ERRORS INDUCED BY APPELLANT. Appellant can not complain because of errors at the trial induced by himself.

7. Contract for Right of Way: REFORMATION: MISTAKE: MUTUALITY: NEGLIGENCE. A court of equity will reform a contract for the pur-chase of a railroad right of way which describes the line of the road to be different from that afterwards actually given it, only when there is a showing of fraud, accident or mistake, and a mistake that would justify a court of equity in reforming such a contract would be a mutual mistake of fact, and the party who seeks the equitable relief must show that he is without negligence in the matter.

8. ———: DAMAGES FOR LAND TAKEN: INTEREST. The plaintiff, in a suit for that compensation which the Constitution requires to be paid to a landowner before his land can be taken for a railroad or other public use, is entitled to interest on the amount of damages allowed. Such suit is not one for damages for trespass.

Appeal from Johnson Circuit Court.—*Hon. W. W. Wood,* Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1)   In a case where the answer is a virtual admission of plaintiff's cause of action, but asks affirmative relief on equitable

grounds, the entire case is converted into one in equity, to be governed by the rules of equity practice. O'Day v. Conn, 131 Mo. 325; Schuster v. Schuster, 93 Mo. 443; Allen v. Logan, 96 Mo. 591; Wendover v. Baker, 121 Mo. 289. (This was an action on promissory notes—the defense was equitable, asking the court to decree specific performance of an alleged contract for the cancellation of the notes. Defendant failed below, and there was judgment on the notes, but the case was treated on appeal as one in equity.) McCollum v. Boughton, 132 Mo. 620; Hodges v. Black, 8 Mo. App. 389; s. c. 76 Mo. 537. When a court of equity once gets jurisdiction of a case, it retains that jurisdiction until complete justice be done. Woodward v. Martin, 106 Mo. 362; McCollum v. Boughton, 132 Mo. 621. (2) The plaintiff Miller, under the evidence in the case, is estopped to claim that the contract signed by him was not intended to cover the land actually occupied by the railroad company. Provolt v. Railroad, 57 Mo. 256; Baker v. Railroad, 57 Mo. 265; Kanaga v. Railroad, 76 Mo. 207; Gray v. Railroad, 81 Mo. 126; Cory v. Railroad, 100 Mo. 282; Dodd v. Railroad, 108 Mo. 295; Planet Co. v. Railroad, 115 Mo. 613; Webster v. Railroad, 116 Mo. 114; Scarritt v. Railroad, 127 Mo. 298; Farley v. Pettes, 5 Mo. App. 321; Imboden v. Ins. Co., 31 Mo. App. 321; Lumber Co. v. Kruger, 52 Mo. App. 418. In Hosher v. Railroad, 60 Mo. App. 330, this rule of estoppel was applied where the railroad had been built on land known to be outside of that contracted for. (3) The contract must be construed in the light of the surrounding circumstances, and with reference to the objects intended to be accomplished. Crawford v. Elliott, 78 Mo. 497; Tureman v. Stephens, 83 Mo. 22; Belch v. Miller, 32 Mo. App. 397; Dobbins v. Edmonds, 18 Mo. App. 307; Moser v. Lower, 48 Mo. App. 85. (4) The parties by their conduct have given to the contract a construction which applies

it to the land actually occupied by the railroad as constructed. Goldman v. Wolff, 6 Mo. App. 490; Mathews v. Danaby, 26 Mo. App. 660; Brewing Co. v. Waterworks Co., 34 Mo. App. 49; Strauss Saddlery Co. v. Kingman & Co., 42 Mo. App. 208; Dentman v. Kilpatrick, 46 Mo. App. 624; Ridge v. Transfer Co., 56 Mo. App. 133.    (5) Conceding that at the outset the agreement signed by Miller was a mere "option," and therefore unilateral, yet it became a valid mutual contract as soon as the railroad company entered upon the land and commenced the construction of its railroad.   At that time the company had the right to elect on which condition and at what price it would take the land—still it was bound to take it at one price or another stated in the written agreement.   When it formally determined to take it at the price of $600 and so notified Miller and demanded a deed, the terms and conditions all became fixed, and there was a valid binding mutual contract between the parties for the conveyance of the land for $600.   Bigelow v. Ames, 108 U. S. 10; Miller v. Cameron, 15 Atl. 842; Woodruff v. Woodruff, 16 Atl. 4; Richards v. Green, 8 C. E. Green (N. J.), 536; Ivory v. Murphy, 36 Mo. 543; Walker v. Owen, 79 Mo. 571; Curran v. Rogers, 35 Mich. 221; Corson v. Mulvaney, 49 Pa. St. 88; Frick's Appeal, 101 Pa. St. 489; Moses v. McClain, 2 So. Rep. 741; Johnson v. Trippe, 33 Fed. Rep. 530; Bishop on Contracts, secs. 784-844; Martin v. Grimes, 88 Mo. 478; Bradford v. Foster, 9 S. W. 195.    (6) Even if the contract had been intended to apply to the first line, the plaintiff would only have been entitled to damages for the amount of land actually taken south of the hundred-foot strip.   3 Elliott on Railroads, sec. 937; 1 Rorer on Railroads, 313; R. S. 1889, sec. 2734; Clark v. Railroad, 36 Mo. 224; Munkers v. Railroad, 60 Mo. 334; Benson v. Railroad, 78 Mo. 513; Abbott v. Railroad, 83 Mo. 271; Jones v. Railroad, 84 Mo. 151; Moss v. Railroad, 85 Mo. 86; Cory v. Railroad, 100 Mo. 292; McCord v. Railroad,

21 Mo. App. 92; Edwards v. Railroad, 82 Mo. App. 96. (7) The evidence considered as a whole establishes that the contract of May 31, 1895, was made with reference to the second line on which the railroad was built. The plaintiff was, therefore, not entitled to recover any damages, and the final judgment in the case should have been a decree in accordance with the prayer of defendant's answer. (8) In any event the court erred in requiring the jury to include interest in the assessment of damages. R. S. 1889, sec. 4430; R. S. 1899, sec. 2869; State ex rel v. Hope, 121 Mo. 34.

*O. L. Houts* and *S. T. White* for respondent.

(1) There was no evidence before the court of a mistake in the written instrument sought to be reformed. 1. The admitted evidence is that Sommerfield, the right of way agent who negotiated with plaintiff and wrote said instrument, was acting under special and limited powers. He was given by his principal a plat of the railroad as located, surveyed and staked out over and across the plaintiff's farm on May 31, 1895, and authorized to procure an agreement by which defendant would have the right to purchase the right of way on that line and no other. Said agent tells, as a witness, that he was given the printed blank of this instrument which he filled out and plaintiff signed. It is the printed part of the instrument that defendant claims is the part thereof in which lies the mistake, to-wit: "As said center line is located, surveyed, and staked out over and across said above tract." It is the first time that a court of equity was ever called upon to reform the blanks sent out by a company to its agents, and it is not believed that this court will set a precedent for such a proceeding. 2. There was practically no evidence that said instrument did not express the intention of the parties at the time. Not one of the four persons present at the

signing really claims that it did not say just what the parties intended it should say.   (2) The defendant asks a court of equity to exercise its equitable powers to relieve it of a just and equitable claim of $1,800 that plaintiff has against it, by the payment of one-third of that amount.   No court of equity will lend itself to such a purpose.   Equity will not reform a contract or enforce it specifically in aid of what is inequitable.   Veith v. Gierth, 92 Mo. 97; Hollman v. Conlon, 145 Mo. 378.   (3) To have the alleged contract reformed and specifically enforced it was necessary for the defendant to show that a mistake had been made in writing the instrument, and the exact terms of the instrument that the parties had agreed upon, not only by a preponderance of the evidence, but by evidence so clear, cogent and convincing as to leave no reasonable doubt in the mind of the chancellor.   Clark v. Railroad, 127 Mo. 255; Fanning v. Doan, 139 Mo. 392; Veith v. Gierth, 92 Mo. 97; Berry v. Hartsell, 91 Mo. 132.   (4) The question by defendant denominated estoppel was at request of defendant first tried by the court, then by the court with a jury under instructions not challenged by defendant in his brief.   There is nothing set up in the answer that would estop plaintiff from maintaining this action. Plaintiff does not seek to eject defendant or to enjoin the construction of its road, but only to recover for damages done his property.   Scarritt v. Railroad, 127 Mo. 303.   (5) Plaintiff was entitled to interest on the amount of his damages from the date of the entry on his land by defendant, and there is nothing in the last proposition of defendant's brief.   Webster v. Railroad, 116 Mo. 121.

VALLIANT, J.—Plaintiff by this suit seeks to recover of defendant compensation for injury to his farm caused by defendant in entering on his land appropriating a strip one hundred feet wide upon which it constructed and is maintaining

and operating its railroad.

Defendant by its answer admits all the allegations of the petition, but seeks to avoid liability for the damages claimed, because it says it had a right to enter on the plaintiff's land and appropriate it for the purpose named, by virtue of a written contract executed by plaintiff granting the right of way and authorizing the acts complained of, upon payment of $600, which it had tendered the plaintiff before suit, and plaintiff had refused the same. The answer sets out in effect that the written agreement mentioned does not in terms give the defendant for its right of way the hundred-foot strip actually taken, but was intended to do so, and it prays a reformation of the written instrument and a specific performance of the agreement as really intended by both parties.

The written agreement purports, for the nominal consideration of one dollar, to convey to defendant the right to purchase, if it sees fit to do so, within three months from its date, May 31, 1895, for $600, a right of way through plaintiff's land of fifty feet wide on each side of the center line of defendant's railroad "as said center line is located, surveyed and staked out over and across said above-described tract of land." At that date there was a center line so surveyed and staked off through the plaintiff's land, but after the agreement had been signed and delivered, to-wit, about June 4, defendant surveyed and staked off another line fifty or seventy feet north of the former line, and it was on the second line that the railroad was constructed. The answer states that the plaintiff objected to the first line, and, whilst it does not say that the change was made in consequence of that objection, it says that at the time the agreement was signed the plaintiff was informed that it had been determined that the line should be changed by moving it about fifty feet north and that plaintiff then proposed and agreed that if that was done he would convey the right of way for $600, and

accordingly executed the agreement. "That it was the intention of both the plaintiff and the defendant through its said agent that the contract should cover a strip of land lying along and extending fifty feet on either side of the center line of the main track of the St. Louis & Kansas City Railway Company, as it would be located in accordance with the intention of defendant and the desire of the plaintiff, and also extending to the north line of the west part of plaintiff's land, so that no portion of the west part of his land would lie north of the right of way and between it and the land of said Littlefield, and so that the strip of land to be affected by said contract would be the same as the land actually occupied by the defendant when it commenced the construction of its said railroad across the plaintiff's land, being a strip extending fifty feet in width on either side of the center line of said railroad as it is now located and constructed, and to the north line of the west half of plaintiff's land and that the description in said contract when applied to the facts actually existing at the time of its execution did not and does not correctly state the intention of the parties, or the contract between them, and was so erroneously expressed in consequence of the parties not being correctly informed as to the real condition and position of the stakes for the line of said railroad at the time said contract was prepared and signed." The answer then goes on to say that in July following, the defendant entered and built its road, expending large sums of money on the faith of the agreement and without objection of plaintiff who saw the work going on, and the plaintiff is estopped now to question the defendant's right to do as it has done. It is also pleaded that within the three months specified, the defendant tendered the $600 and demanded a deed in accordance with the contract, which was refused, and defendant is still ready to pay the $600 and take title to the land it now occupies. The an-

swer is designed to be in effect a bill in equity and seeks the affirmative relief above mentioned.

The reply was a general denial.

When the cause came on for trial the plaintiff insisted that it was a suit at law, to be tried with the help of a jury; the defendant contended that it was a suit in equity to be tried by the court as in chancery. The court ruled that the issues presented by the answer made a case in equity, but that if upon a trial of those issues the finding should be for the plaintiff the question as to plaintiff's damages would be for a jury. Thereupon, a trial of the issues under the affirmative averments of the answer was had and the court found for the plaintiff, and entered a judgment in his favor on those issues, and at the same time ordered that the remaining issues were for trial by jury and continued the cause to the next term for such trial. Defendant filed a motion for new trial, which was overruled, and filed a bill of exceptions and took an appeal to this court, but when the record was brought here the appeal was dismissed on the ground that it was premature, there being no final judgment. The circuit court then proceeded to try the remaining issues with the aid of a jury, who found for the plaintiff and assessed his damages at $1,800 principal and $248 interest, making a total of $2,046, for which judgment was rendered, and defendant, after due course, has taken this appeal.

At the last trial the defendant again insisted that its answer had converted the whole case into a suit in equity, and it was to be tried by the court as such, while the plaintiff contended that the only question was as to the amount of his damages, to be assessed by a jury. The court adhered to its former ruling, that, the issues in equity having been found against the defendant, the issues under the plaintiff's petition were for trial as a suit at law; but the court, over the plaintiff's objection, allowed the defendant to introduce evidence again on the issues

tendered by the answer, and they were submitted to the jury, with the result as above stated.

I.   The first question for our consideration arises on the motion of respondent to transfer the cause to the Kansas City Court of Appeals upon the ground that it is not within the jurisdiction of this court. Respondent cites in support of his motion the decision of this court in Edwards v. M. K. & E. Ry. Co., 148 Mo. 513. In that case the cause of action stated in the plaintiff's petition was of the same character as that here stated, but there was no such equitable cross-action pleaded in the answer as we have here. In that case the plea was that defendant had a title to the easement it was using, and although the title was necessarily inquired into, yet the judgment in the case did not directly affect the title. The title there was involved as it may be involved in any ordinary action in trespass, when only a money judgment is demanded. But in the case at bar, the answer of defendant is aimed to be a bill in equity to reform the contract and divest the plaintiff of his title. If the defendant should obtain the object of its equitable counterclaim, the judgment in this case would itself directly affect the title to the land in question. The full legal title to the land being conceded by the defendant to be in plaintiff, the defendant seeks a decree divesting the plaintiff of and investing the defendant with so much of that title as will render the plaintiff's estate servient to an easement of defendant. Title to real estate is therefore affected and this court has jurisdiction.

II.   Appellant contends that its answer converted the whole case into a suit in equity and that the court erred in submitting any of the issues to a jury. In support of that contention appellant refers to the familiar principle, that where a court of equity has jurisdiction of a case for any purpose it will not leave it to be sent unfinished to another court, but will dis-

pose of all the issues even if some of them be such as, if standing alone, are triable only in a court of law (Woodward v. Mastin, 106 Mo. 362; McCollum v. Boughton, 132 Mo. l. c. 621). But there must exist in the facts of the case some equity upon which it exercises its peculiar jurisdiction in part relief. If when it comes to consider the case there is found no equity in it, and no equitable relief, therefore, is granted, a court of equity will not retain the case to try the purely legal issues that may be in it.

The principles which distinguish a law suit from a suit in equity are to be as clearly regarded and preserved under our code of civil procedure as they were when law and equity were administered in separate tribunals. Under the ancient system, if the defendant after being brought into a court of law to answer the plaintiff's cause of action had been advised that its remedy lay in a reformation of its written contract and a specific performance of the same, it would have filed its bill in equity showing the facts and praying that relief, and praying also that the plaintiff be enjoined from the prosecution of his suit in the law court until the cause could be heard in the court of equity. In such case if the defendant in the law suit prevailed in his suit in equity he would be entitled not only to the reformation of his contract and a specific performance of the same, but also to a perpetual injunction against the plaintiff in the law suit. And in that way equity would dominate the whole case. But if the defendant in the law suit failed in his equity suit his bill would be dismissed and the plaintiff in the law suit would be free to proceed to final judgment in the court of law. The uniting of law and equity in one suit as authorized by our code does not confuse the two; but only requires both to be tried in one court, the issues in equity being for trial by the judge as a chancellor, the issues in law by the same judge with a jury.

Since, however, the same court has control of the whole case, no injunction is required, either temporary or perpetual.

When the answer is filed showing an equitable defense and asking equitable relief, the court merely postpones the trial of the issues tendered by the petition until those tendered by the answer are tried, and if the equitable defense is sustained and if it covers the whole case, a final judgment is rendered for the defendant, but if the equitable defense is not sustained, the plaintiff's cause of action stands for trial as at law.

This is the view the circuit judge took of this case and his view was correct. But after trying the issues tendered in the answer and finding the equitable defense not sustained, the court should have only recorded its finding and withheld its judgment on the same until the rest of the case was tried and then pronounced judgment on the whole case; for there can be but one final judgment in a case.

Upon the second trial, the court, at the instance of the defendant, allowed evidence on the equity side of the case to be given in and submitted the whole to the jury. The court refused instructions asked by defendant authorizing a verdict in its favor or limited to $600, if the jury should find that the parties intended by the written agreement to confer on the defendant a right of way, not as then staked out but as afterwards actually occupied; but gave an instruction authorizing a verdict for defendant if the jury should find that the defendant constructed its road where it did, believing it had authority under the contract to do so, and the plaintiff knew what defendant was doing and did not object or protest or inform defendant that the contract did not give a right of way on that location.

The plaintiff at the second trial contended that there was no question to be tried except as to the amount of his damages, and that all other evidence was irrelevant, but the court ruled to the contrary as above mentioned and refused instructions asked by the plaintiff to the effect that the only questions were

those relating to the amount of his damages.

The plaintiff's contention on this point was correct. The court sitting as in chancery had tried all other issues and announced its findings. These findings were conclusive of those issues until set aside in solemn form on sustaining a motion for a new trial or by the court of its own motion. All the evidence heard by the court at the second trial in support of the equitable defense, which was substantially a repetition of that introduced at the first trial and some in addition, was irrelevant and should not have been heard. But it was received over the objection of the plaintiff, and at the instance of the defendant, and therefore the defendant, who is the appellant, can not complain.

The answer does not really state facts sufficient to constitute an estoppel. In order to create an estoppel the plaintiff must have so behaved as to have misled the defendant to its disadvantage. But it is not alleged that the plaintiff knew anything of the matter that the defendant did not know. Defendant had the contract in its possession, its own agent had written it, its own officers and servants had staked out the line as it was when the agreement was signed, and its own officers changed the location, and after the execution of the contract caused the new line to be staked out. If, as now contended, the parties had agreed that the line was to be changed, the defendant knew that fact then as well as it did afterwards, and on its theory knew that it was constructing its road on a line not authorized by the terms of its agreement. If plaintiff had known and defendant had not known that the road was being constructed on a line different from that called for in the contract, and plaintiff had remained silent, and thus misled the defendant, the plaintiff would have been estopped, but neither in the answer nor testimony is there anything of that kind. [11 Am. and Eng. Ency. of Law (2 Ed.), pp. 382, 434; Bales v. Perry, 51 Mo. 449; Blodgett v. Perry, 97 Mo. 263.]

But the question of plaintiff's damages was submitted, among other questions that should not have been submitted, to the jury, and defendant in its brief concedes that the evidence justified the award of $1,800 if the equitable defense was not sustained by the proof.

Upon the objections, therefore, urged by appellant as to the course of procedure, we hold that the entry of judgment upon the findings of the court on the equity issues, before the other issues had been tried, was premature, but it was an irregularity from which no injury has resulted and therefore not cause for reversal; that the hearing of the evidence before the jury on the issues previously tried by the court and the submission of issues other than that relating to the amount of plaintiff's damages were errors, but they were induced by the appellant and therefore it can not complain.

III. We come now to consider the point which appellant regards as the most serious in the case, that is, its contention that the court erred in finding against it on the equitable counter-suit.

The written agreement in question was made May 31, 1895. The survey through plaintiff's farm had been made and the stakes set about April 5. By that line there was cut off about four acres of plaintiff's land lying next to his neighbor, Littlefield, and in the discussion of the subject of granting the right of way the plaintiff referred to that fact and said that the company should allow him for that land. The agent of defendant suggested that plaintiff sell that to Littlefield, but plaintiff replied that he and Littlefield were not on the best of terms. That is substantially all that was said on that point between them. When the new line was afterwards laid off there was less than one acre of the land thus cut off and the defendant's evidence tended to show that that fraction was figured in the $600 agreed on as the price of the right of way, but the plain-

tiff's evidence contradicted that.   It was shown that the plaintiff was anxious to have a depot located on his land and was willing to make concessions to obtain the same; allusion is made to that in the written agreement.   The second line was staked out about June 5, and after that the plaintiff had correspondence with the officers of the defendant urging the establishment of the depot on his land, and according to defendant's answer herein, that matter is still undetermined.   Defendant's testimony tended to show that a few days before the contract in question was made, the defendant's chief engineer had determined to make the change in the line and had given the right of way agent a blue print of a plat showing the change, and the agent testified that he had that blue print when he made the contract with plaintiff, showed it to him and that the line really agreed on was the line shown in the blue print.   There were four persons present when the contract was negotiated and executed, the defendant's right of way agent, and Mr. Baker, a neighbor of plaintiff, and plaintiff and his son. The two latter testified that there was no plat shown except one showing the original line. Mr. Baker, who was a witness for defendant, said nothing on that subject.   But he did say that plaintiff was dissatisfied with the original line because it left a considerable strip of his land cut off next to Littlefield's and that he and the right of way agent talked about that, he claiming that he ought to be paid for it by the railroad company, and the agent saying that he could sell it to Littlefield.

Whilst it appears from the evidence that the change in the location was more favorable to the plaintiff in one respect, at least, that is, that it reduced the area of his land cut off next to Littlefield's, yet the defendant's own evidence shows that the change was determined on by the chief engineer of defendant in his office, of his own motion and without reference to plaintiff's wishes.   According to the testimony of the right of way agent,

he knew that change had been made, and had in his possession a blue print showing exactly where the new line was to run. If that was so, what occasion was there for a discussion between him and the plaintiff as to whether the defendant would pay for the four acres of land so cut off, or plaintiff should try to sell it to Littlefield? The defendant's witness Baker, speaking of what occurred on the occasion of the signing of the contract, said: "Mr. Miller said there was quite a strip of land left between him and Mr. Littlefield; and Mr. Sommerfield told him that he could get Mr. Littlefield to buy it of him." Sommerfield's testimony was to the same effect. Sommerfield, the right of way agent, wrote the contract. If, as he testified, he then had that blue print in his hands, had shown it to plaintiff and they had agreed on the line there shown, it would have been just as easy and more natural to have described the agreed line laid down on that plat, as to have misdescribed it by the stakes set. He knew previously that the stakes on the original line were set and he with plaintiff had been in plain view of them that day, although he testified that he did not see them that day. On his examination in chief this witness testified that at the time he made the contract with the plaintiff he thought the stakes had been moved to the new line. That gave a plausible reason for writing the contract as he did. But on cross-examination he said: "Q. Did you not represent to Mr. Miller, when you went to take his option, that the line had not been changed? A. Said that the stakes had not been changed? Q. That the stakes had not been changed? A. Yes, sir. Q. Did you not tell him that there had been no change? A. I told him that I didn't think they had been changed." The whole equitable defense rests on the assumption that defendant's agent, at the time he wrote the contract, supposed that the stakes had been changed from the old to the new line. The defendant's own evidence does not bear out that assumption and the plaintiff's

testimony is squarely to the contrary.

The testimony shows that after the new line was staked off and work of construction was begun, plaintiff had correspondence with the defendant's officers in which he made no objection to the new line; but that correspondence had reference to the proposed depot for which he was anxious and willing to make concessions. It proves nothing against the plaintiff's right to compensation for the injury complained of. The answer itself, which is very elaborate and might even be denominated argumentative, is not altogether clear as to the ground upon which reformation of the contract is asked. In one part it is averred that at the time of making the contract the parties did not know how far the work of changing the stakes had gone, but knew that they were to be changed, and in another part that the contract was written misdescribing the line intended because the parties were not correctly informed as to the true condition. It is one thing to have made the contract knowing that the change had been determined upon, and that the stakes were to be changed, and quite another to have made it under incorrect information as to the real condition. If, as the answer in one place states, the parties knew that the change was determined upon but were uninformed as to the extent, if at all, to which the stakes had been changed, there is no excuse for writing the contract as it was written. And if the defendant relies on the statement that the contract was written under incorrect information, it does not go far enough to make a case in equity. A court of equity will grant relief in such case only when there is a showing of fraud, accident or mistake. Here there is neither fraud nor accident attempted to be shown, and mistake is not clear. A mistake that would justify a court of equity in reforming such a contract would be a mutual mistake of fact. If parties enter into an agreement mutually assuming or believing in the existence of a certain condition of things, and contract or intend to contract in

reference to that condition, and it is afterwards discovered that that condition did not exist, a court of equity will so reform their contract, if it can with justice be done, as to accomplish the real purpose they had in view. But in the exercise of this jurisdiction the court does not assume to make a contract for the parties; it only gives effect to the real contract they both made. If, therefore, it should appear that one party only was under a misapprehension as to the facts, the other party will not be forced as to the performance of an agreement he never made, he being free from fraud in the matter. There is another point to be observed in such a case. The party who seeks the equitable relief must show that he was without negligence in the matter. Equity does not interfere to relieve men of the consequences of their own carelessness. If the defendant's agent, contracting with the plaintiff for the right of way, did not know to what extent the work in changing the line had progressed, whose fault was it?

Neither under the defendant's pleading nor proof do we see any cause to reverse the judgment, on the issues under the equitable counter-suit.

IV. The point is made that the court erred in directing the jury to allow interest on the amount of damages allowed. The argument on this point proceeds on the theory that this is a suit for damages for a trespass on plaintiff's land, but that is not the correct nature of this action. It is a suit for that compensation which the Constitution requires to be paid to the plaintiff before his land can be taken for public use. That compensation was due and payable on the day that defendant took possession of the plaintiff's land, the compensation is assessed as of that date and the plaintiff is entitled to interest on the sum from that date. [Webster v. Kansas City & S. Ry. Co., 116 Mo. 114.]

The judgment is affirmed. All concur.