Edward H. LEIMKUEHLER and Nellie C. Leimkuehler, Plaintiffs-Respondents,

v.

Thelma SHOEMAKER, Defendant-Respondent,

George M. Siglock and Nina M. Siglock, Defendants-Appellants.

No. 47488.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

James L. Gillham, Jeannette K. Paxton, Independence, for appellants.

Arthur B. Taylor and Kenneth H. Taylor, Independence, and Walter A. Raymond, Kansas City, for respondents Edward H. and Nellie C. Leimkuehler.

HOLMAN, Commissioner.

Action in equity to reform a warranty deed wherein defendant Thelma Shoemaker (third-party plaintiff) conveyed a certain 60-foot lot to plaintiffs. Defendant Shoemaker filed a third-party petition, the effect of which was to confess the allegations of plaintiffs' petition and to join with plaintiffs in seeking relief against defendants George M. and Nina M. Siglock. The effect of the pleadings was to also seek reformation of a deed given by defendants Siglock to Thelma Shoemaker. A trial resulted in a decree for plaintiffs against defendants Siglock and the action was, by the court, dismissed as to defendant Shoemaker. The Siglocks have appealed.

On April 16, 1938, Mr. and Mrs. Siglock acquired title to "all of Lot 1, Block 7, Englewood." On April 20, 1954, they purchased an adjoining lot described as "all of Lot 7, Wilhite's Englewood Annex." Both of said lots are situated on the south side of 19th Street in Independence, Missouri. A number of years ago they constructed a house and garage near the west line of Lot 1 and occupied the same. After acquiring title to Lot 7 the Siglocks constructed a one-story duplex 40 feet wide on the east 60 feet thereof. On the west part of Lot 7 they constructed a finished basement which for a time was occupied as a dwelling, and then at a later date the Siglocks constructed another duplex upon that basement foundation. The 60-foot lot in question lay between the original residence of the Siglocks on the east and the last-mentioned duplex on the west. The testimony indicated that 19th Street was very narrow and the residents thereon found it undesirable to park their cars in the street. Apparently at the time the instant duplex was constructed the appellants prepared two parking places for use of the occupants. The one on the east was gravel,

edged with boards, and was a little more than a car length in depth. About half of it was in front of the house and the other half extended beyond the east side of the house. The parking place on the west could not be located in the same manner as the one on the east because of trees. The west boundary of that parking place was approximately 15 feet west of the west side of the house.

In September 1956 the Siglocks listed the duplex in question for sale with Mr. Charles Ware, a real estate broker. A few days thereafter he showed the property to Mrs. Thelma Shoemaker. Mrs. Shoemaker testified that Mr. Ware told her that the lot was 60 feet wide and that the duplex was situated in the middle of the lot so that there would be 10 feet of ground on each side of the house; that she also talked with Mr. Siglock and he told her there was at least ten feet on each side which would be enough space in which to park a car; that she had planned at the time of purchasing the property to add a carport on each side with a place in the rear for storage; that she specifically inquired whether there would be enough space for carports and was told that there was.

On September 22, 1956, Mrs. Shoemaker entered into a contract to purchase the duplex from the Siglocks, the contract describing the property as follows: "The property known as 11005 and 11007, East 19th St. Situated on a tract 60 feet wide, east and west; legally described as follows: The East 60 feet of Wilhite's Englewood Annex, a subdivision of land now in Independence, Jackson County, Mo." On October 1 thereafter, Mrs. Shoemaker received a warranty deed conveying the property to her by the following description: "The East 60 feet of Lot 7, as measured along the north line, Wilhite's Englewood Annex, a subdivision of land now in the City of Independence, Missouri." A few months thereafter Mrs. Shoemaker listed the property for sale with Mr. H. R. DeLong. At that time she told Mr. DeLong there was 10 feet on each side of

the duplex and that she had enough land on each side for carports or garages. Mr. DeLong showed the property to plaintiffs and admittedly represented to them that the 40-foot duplex was placed in the center of the 60-foot lot so that there would be approximately 10 feet on each end for a carport or a garage. "That is the way I recommended the property and that is the way he bought it, a 60-foot front lot with the duplex in the center with ten foot on each end, that is the way I listed the property and that is the way I sold it."

On April 13, 1957, plaintiffs entered into a contract to purchase the property from Mrs. Shoemaker. The property was described therein as "11007 East 19th Street, Englewood, Jackson County, Missouri." On April 23 thereafter, plaintiffs received a warranty deed to the property which described the land conveyed in exactly the same manner as described in the deed which conveyed it to Mrs. Shoemaker.

Mr. Leimkuehler testified that Mr. DeLong had represented that the duplex was located in the center of the 60-foot lot with 10 feet on each side for a driveway; that about three days after he had completed purchase of the duplex he went to the property and was sowing grass seed in the yard when Mr. Siglock came over; that he asked Mr. Siglock to show him approximately where the lines were located and he showed him a point about ten feet to the east and another point about the same distance west of the house which he indicated to be the boundaries of the lot. In regard to the west side of the lot he stated, "you will have to move that tree so you can drive straight in, so you can come in on your ten feet of the driveway"; that plaintiff did remove the tree about the time he moved into the property and graveled a driveway alongside the house on the west. At the time of the foregoing conversation Mr. Siglock suggested that they divide the expense and have the lot surveyed so as to "establish a definite line." This was agreed upon and the lot was thereafter surveyed. The duplex is not desig-

nated upon the survey admitted in evidence but there seems to be no dispute about the fact that measurements from stakes placed on the lot indicate that the west wall of the duplex is 4 feet 10½ inches from the west boundary and the east wall is 15 feet 1½ inches from the east boundary of the lot. Mr. Leimkuehler stated that according to his measurements the east line runs within one inch of the corner of defendants' garage and the eave and gutter of the garage extend 8 to 10 inches over plaintiffs' property. The witness testified further that after the stakes were set Mr. Siglock came over and Mr. Leimkuehler stated, "Mr. Siglock, these stakes don't come anywhere near where you said they came," and that Mr. Siglock answered, "Well, this sure comes as a surprise to me because when I laid out this lot I started on my east property line and measured over to a point, and I laid out a 60-foot lot and built a duplex in the center, with 10 feet on each side for drives." At that time Mrs. Leimkuehler said, "Mrs. Shoemaker is sure going to hear about this," and then Mr. Siglock said, "I am sure Mrs. Shoemaker knew nothing about this because I sold the property to her just as I have described it to you." A short time later Mr. Siglock said, "I am sure we can work something out"; that perhaps a week later he again saw Mr. Siglock who at that time stated, "I won't be able to give you any of that ground because I need all of it to build a carport on the side of my duplex," and to which the witness replied, "I am going to have that ten feet I bought, one way or the other," and that Mr. Siglock then said, "You don't have anything on paper." Mrs. Leimkuehler testified in the case but her testimony will not be detailed herein as it was substantially the same as that of her husband.

Mr. Charles Ware testified on behalf of defendants Siglock and denied that he made any representations to Mrs. Shoemaker in regard to the location of the building upon the lot and stated that nothing had been said in his conversation with her con-cerning carports or garages or driveways on the property. He stated that Mr. Siglock had been asked concerning the east boundary line and designated a point approximately two feet east of his garage as the east line. Other than that he stated that he had not heard any conversation between Mr. Siglock and Mrs. Shoemaker concerning the location of the boundaries of the lot.

Mr. Siglock testified that he sold the east 60 feet of Lot 7 to Mrs. Shoemaker and that she asked about the lines and he had told her that the east line was in the area between the garage and a utility pole and that the lot would run 60 feet west from that point. He denied that she said anything about putting carports or driveways alongside the building and stated that there was no conversation with respect to where the duplex was located on the lot. He stated that he did not know at that time exactly where the duplex was located on the lot, as he owned the land on both sides and "I just figured I would divide the space in there from about where I thought my line was." He denied having pointed out the lines to plaintiffs except the location of the east line near the garage. He also denied having had the conversation with plaintiffs after the survey was made concerning the fact that he was surprised by the result, etc.

Mrs. Siglock also testified and denied that she had had any conversation with Mrs. Shoemaker regarding the boundary lines, and stated that she had never talked with either of the plaintiffs concerning that subject.

The trial court made detailed findings of fact which were generally in accord with the testimony of Mrs. Shoemaker and plaintiffs and which included the following: " * * * that both the real estate contract and the warranty deed were drawn by the Siglocks or their real estate agent, Charles Ware; that Thelma Shoemaker had no part in the drawing of either the real estate contract or the war-

ranty deed; that the real estate contract and warranty deed between defendant Thelma Shoemaker and plaintiffs Leimkuehlers * * * were drawn by the seller, Thelma Shoemaker, or her real estate agent; that Mrs. Shoemaker believed that the description in the warranty deed she received from the Siglocks was truly the legal description of the property the Siglocks represented they were selling her, and which she, in turn, represented she was selling to the Leimkuehlers; that the Siglocks represented to Mrs. Shoemaker that they were selling her a duplex forty (40) feet in length located on a tract of land sixty (60) feet wide, on which there was a ten (10) foot strip on both the east and west ends of the duplex for driveway purposes; * * * that at the time the deed was executed by the Siglocks to Mrs. Shoemaker both of them believed that the description in the deed, 'The East 60 feet of Lot 7, Wilhite's Engelwood Annex,' was the true legal description of the duplex property as represented to Mrs. Shoemaker, and later represented to the Leimkuehlers by both Mr. Siglock and Mrs. Shoemaker, 'being a tract of land 60 feet wide on which there was located a duplex 40 feet long in the center of the tract with 10 feet on each east and west end for driveway purposes.'" The court concluded from the foregoing facts that "there was a mutual mistake in the execution of the warranty deed between the Siglocks and Mrs. Shoemaker, and later between Mrs. Shoemaker and the Leimkuehlers."

In the judgment it was decreed "that the defendants George M. Siglock and Nina M. Siglock convey to the plaintiffs Edward H. Leimkuehler and Nelly C. Leimkuehler, the West Five (5) feet, one and one-half (1½) inches of the East Sixty-five (65) feet one and one-half (1½) inches of Lot 7, Wilhite's Englewood Annex, and that the plaintiffs convey to the defendants George M. Siglock and Nina M. Siglock the East Five (5) feet one and one-half (1½) inches of the East 60 feet of Lot 7 * * * and that the parties are given

twenty (20) days to exchange deeds and should this not be done within the allotted time, title will vest in the parties as found in the terms of this decree."

■ We have recently said, "* * * when by mutual mistake a contract or other instrument is not expressed in such terms as have the force and effect that the parties intended, then it is the clear duty of the court to correct the mistake. This power of a court of equity to reform an instrument, which by reason of mistake fails to express the intention of the parties, has long been considered unquestionable. * * * and a court of equity will exercise this power not only as between the original parties, but as to those claiming under them in privity * * *. However, a mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. * * * and that mutual mistake, in order to justify granting the relief of reformation, must be established by clear and convincing evidence." Walters v. Tucker, Mo.Sup., 308 S.W.2d 673, 675, 679.

■ This being an equitable action we will review the evidence de novo and reach our own conclusion as to its weight and value. "However, we usually defer to the chancellor's findings when the case turns upon the credibility, weight and value of the oral testimony of witnesses who have appeared personally before him, unless we are satisfied that the findings should have been to the contrary." Pizzo v. Pizzo, 365 Mo. 1224, 295 S.W.2d 377, 385.

The testimony of plaintiffs and Mrs. Shoemaker is clearly to the effect that the Siglocks and Mrs. Shoemaker agreed that the duplex she was purchasing was in the center of the lot to be conveyed and that there was a ten-foot strip at each end of the building. The contract and deed did not describe the land which the Siglocks intended to convey and which

Mrs. Shoemaker thought she was receiving. That situation, in law, constituted a "mutual mistake" and would warrant relief by a court of equity. General Refractories Co. v. Howard, 328 Mo. 1139, 44 S.W.2d 65; Maze v. Boehm, 281 Mo. 507, 220 S.W. 952; Zahner v. Klump, Mo.Sup., 292 S.W.2d 585. The same situation existed in regard to the contract and deed between Mrs. Shoemaker and plaintiffs.

From what we have heretofore said it becomes apparent that the decision in this case is dependent upon a question of credibility, i. e., the weight and value to be. accorded the testimony of the witnesses. If we believe the testimony of plaintiffs and Mrs. Shoemaker the proof of "mutual mistake" is "clear and convincing" and the judgment should be affirmed. On the other hand, if we believe the testimony of the Siglocks and their agent, Mr. Ware, the judgment should be against plaintiffs and in favor of said defendants. We find very little in the transcript (other than the natural interest of the parties in the outcome of the case) which would cause us to believe or disbelieve any of the witnesses. In that situation the conclusion would seem to be compelled that we defer to the findings of the trial court in order to determine which of the conflicting oral testimony shall be accepted and which rejected. Having had the opportunity to hear the witnesses and to observe their demeanor as they detailed their testimony, the trial chancellor was in a much better position than are we (in reading the transcript) to determine the weight and credit which should be accorded the testimony. We will therefore defer to the trial court and accept its findings upon the issues of fact involved.

Appellants, however, contend that plaintiffs should, in any event, be denied the relief sought because their grantor, Mrs. Shoemaker, knew that appellants did not know the exact location of the boundary lines and she was guilty of negligence in failing to determine their location before entering into the contract. That defense was not pleaded by appellants and was raised for the first time in their motion for new trial. Since there was no timely presentation of that issue in the trial court, it would seem not to be before us for appellate review. Nall v. Wabash, St. L. & P. Ry. Co., 97 Mo. 68, 10 S.W. 610; Osby v. Tarlton, 336 Mo. 1240, 85 S.W.2d 27; Blevins v. Thompson, Mo.Sup., 255 S.W.2d 787. Appellants, however, citing Miller v. St. Louis & K. C. Ry. Co., 162 Mo. 424, 63 S.W. 85, assert that the burden was upon plaintiffs to prove that Mrs. Shoemaker was without negligence in the matter and hence appellants were not required to plead her negligence as a defense. Without indicating our approval or disapproval of that contention we will state our view that, under the circumstances shown, Mrs. Shoemaker was not guilty of such negligence as to bar the relief of reformation by reason of the fact that (before entering into the contract of purchase) she did not have the lot surveyed in order to determine the location of the house thereon. 55 Am.Jur., Vendor and Purchaser, § 76, pp. 550, 551; De Voto v. Fez Construction Co., Mo.App., 271 S.W.2d 199[3].

Appellants also state that plaintiffs are in no better position than Mrs. Shoemaker and that her testimony is not sufficient to discharge plaintiffs' burden of proving by clear and convincing evidence that the deed from appellants to Mrs. Shoemaker should be reformed because of a mutual mistake. They assert that her testimony is inconsistent, and, when examined in the light of human experience, is unrealistic and unbelievable. We deem it unnecessary to discuss the instances wherein it is claimed that her testimony was inconsistent as the probative effect of her testimony as a whole was not thereby destroyed and we have deferred to the trial court upon questions of credibility. The evidence has been heretofore stated and we have indicated our opinion that it was sufficient to warrant the granting of the relief

**732**

plaintiffs sought. The case of General Refractories Co. v. Sebek, 328 Mo. 1143, 44 S.W.2d 60, cited by appellants in support of the instant contention, is so different from the case at bar upon the factual situation presented that it is of little, if any, assistance in that connection.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.