EDWARD SCHLANKER, Appellant, v. ARMSTRONG SMITH, Respondent.

Kansas City Court of Appeals, November 7, 1887.

STATUTE OF FRAUDS—VERBAL CONTRACT—EFFECT OF UNDER—CASE ADJUDGED.—The agreement, in this case, was verbal, and within the statute of frauds, and was binding on neither the plaintiff nor

the defendant. A purchase of land is as much within the statute as the sale of it; the policy of the law being not only to protect owners of land from being deprived of it without written evidence, but also to prevent a purchase of land from being forced by perjury and fraud upon one who never contracted for it.

APPEAL from Montgomery Circuit Court, HON. ELIJAH ROBINSON, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action of replevin, begun before a justice of the peace, for the recovery of a horse. The plaintiff based his title on a chattel mortgage, executed by the defendant to secure the payment of a note for ninety dollars made by the defendant and payable to the plaintiff. The case was tried before the justice, and an appeal was taken from the judgment rendered by him to the circuit court. Payment of the note was the sole defence made. In support of that defence, the defendant testified:

"In December, 1884, I sold plaintiff my farm in Montgomery county, and he then paid me two hundred dollars to bind the bargain; I was to give him possession on the first of March, 1885, and he was to then pay me the balance of the purchase money; in February, 1885, plaintiff came to my house and wanted me to let him off, but I told him I could not very well do it, as I had bargained for another farm, and he then cried and said it was too hard to lose what he had paid me, but that his wife did not want to leave the neighborhood where he then lived; and it was finally agreed that I should pay him ninety dollars, but I did not have the money, and I gave him this note and this chattel mortgage to secure the same; in May following the plaintiff came to me again and asked me if I still wanted to sell my farm; I told him my health had improved and I didn't care so much about it, but we finally traded again, the plaintiff agreeing to give me twenty-five dollars per acre,

amounting to thirty-five hundred and fifty dollars ; he said to me that he had paid me two hundred dollars on the first trade, and twenty dollars on a cane-mill and hay stack, and that I had said I would give him twenty-five dollars to find me a purchaser and he was himself the purchaser, and that he would take my farm at my price if I would let in all these amounts, in all two hundred and forty-five dollars, as in part payment, and I accepted his offer ; he then said he had paid me two hundred and forty-five dollars and that he would pay me two dollars more to bind the bargain tighter, and he took two dollars out of his pocket and gave it to me and said that would leave thirty-three hundred and three dollars ; he then said, 'now your ninety-dollar note is paid off,' and I asked him to give it to me, and he said he didn't have it with him, but would give it to me in Danville the following Wednesday, when and where we had agreed to meet ; on the following Monday Mr. Schlanker's agent came to me and said that he had received a card from Schlanker in which he had requested him to inform me that he would not take my farm unless I knocked off three dollars ; I replied that I would not knock off anything more and that Mr. Schlanker must comply with his bargain ; this was the last I heard from plaintiff for some time ; he afterwards told me he wrote that postal card to his agent, Mr. Martin ; plaintiff came to my house again in March and asked me for the ninety dollars ; I told him I did not owe him anything, as the note had been paid in the trade ; I was always willing to comply with the contract on my part ; Mr. Bourne was present when the last conversation took place at my house.''

It was conceded that the defendant had not, in fact, conveyed the real estate to the plaintiff.

For the defendant the court gave the following instruction :

''If the jury shall believe, from the evidence in this cause, that the note offered in evidence was to be paid

as a part of the purchase money on said lands, and that plaintiff failed to comply with his part of said contract for the purchase of said lands, then the verdict must be for the defendant."

The jury found for the defendant, and from a judgment accordingly rendered the plaintiff has appealed to this court.

BARKER & SHACKELFORD and JOHN M. BARKER, for the appellant.

I.  The court erred in refusing the plaintiff's first instruction to direct a verdict for plaintiff, because there was no disputed fact in the evidence, and it was a simple question of law as to where the verdict should be lodged.   There was not a particle of evidence to establish the plea of payment.   *Smith v. Railroad*, 37 Mo. 287; *Hanrahan v. The People*, 91 Ill. 142.

II.  The court erred in giving the instruction for the defendant, because it assumed that a binding contract had been made in relation to the land.   *Peck v. Ritchie*, 66 Mo. 114; *Life Ins. Co.*, 94 U. S. Rep. 610; 52 Ala. 395; 44 Ill. 355; *Snyder v. State*, 59 Ind. 105. It is a comment on the evidence, and it directed the jury to find a verdict for defendant whether he had complied with his part of the contract or not, or whether he had any excuse for non-compliance.   *Jones v. Jones*, 57 Mo. 138; *Califf v. Thompson*, 81 Ill. 478; *W. F. I. Co. v. Earle*, 33 Mich. 143.

III.  The court erred in overruling plaintiff's motion for new trial, and in giving judgment for defendant, because there was no evidence to sustain the plea of payment.   Rev. Stat. 1879, sect. 2513.

IV.  When there is no doubt about the verdict being against the evidence, the Supreme Court has in some instances reversed for that reason.   *Whitsett v. Ransom*, 79 Mo. 258; *Garrett v. Greenwell, Adm'r*, 92 Mo. 120.

Sol. Hughlett, for the respondent.

I.     There was no dispute as to the contract between plaintiff and defendant about the land trade. They both testified that the price agreed on was twenty-five dollars per acre; and that plaintiff paid two dollars cash; and that it was agreed between them that the amount which plaintiff had paid defendant on the former trade was to be considered and taken in part payment, and they agreed that after deducting the two dollars cash, and the amount formerly paid on the land, and for hay, there was still due defendant $3,303. The note for ninety dollars was given in consideration of the amount paid by plaintiff to defendant on the first trade, and in the last trade it was agreed that this note should be cancelled, and the consideration for which it was given, stand as a part payment of the price agreed on in the last contract. The testimony of defendant on this point is that after they had agreed on the terms, plaintiff said, "now your ninety-dollar note is paid off," and the testimony of plaintiff is, "the note for ninety dollars was second in the amount I paid on the land, the $247."

II.     Both parties treated it as a payment and so long as defendant was willing to comply with his contract the plaintiff could not plead the statute of frauds and recover back what he had paid. See *Galway v. Shields*, 66 Mo. 313, and cases there cited, particularly the case of *Lane v. Shackford*, 5 N. H. 130.

III.     The statute of frauds has no application to this case. The plaintiff and defendant agreed to cancel the ninety-dollar note and to place themselves just in the position which they occupied before that note was executed, and that the amount which plaintiff had paid defendant should be taken as a part payment on the defendant's farm, and certainly there was no reason why such an agreement should not be valid and binding. If plaintiff had offered to complete the contract by paying the balance of the purchase price of the land, the defend-

ant might have invoked the statute of frauds and refused to make the conveyance, but the plaintiff cannot compel the defendant to plead that statute.

IV. Suppose the plaintiff had offered to comply with his contract and pay the balance of the purchase money, and the defendant had refused to make the conveyance, would not the plaintiff have then been entitled to recover the full amount that he had paid defendant, that is the two hundred and forty-seven dollars? He certainly would. Suppose, in such event, the defendant should insist that plaintiff could not recover the money which he had paid, because the matter had been compromised after the first trade by the execution of the ninety-dollar note, would it not be sufficient reply on plaintiff's part that that arrangement had, by agreement between the parties, been cancelled? Undoubtedly it would. Suppose that defendant had executed and delivered to plaintiff a deed, conveying to him the land, and that defendant had accepted the deed and taken possession of the land, but had not paid the balance of the purchase money, could defendant ignore the arrangement by which the ninety-dollar note was cancelled and the two hundred and forty-five dollars was to be considered a payment on the land, and recover from the plaintiff the full amount of the purchase price? No law can be found sustaining such a position. If defendant could not ignore that agreement why should plaintiff be permitted to do so? If it was valid as to defendant why should it not be as to plaintiff?

V. The plaintiff's counsel insists that there was no contract between plaintiff and defendant, because their minds did not meet, etc., but that question was submitted to the jury under instructions very favorable to the plaintiff and the jury found it against him.

HALL, J.—There is no question but that the trial court properly conceived the real meaning and effect of

the agreement last made between the plaintiff and defendant, concerning the real estate, to be, as expressed in the instruction given for the defendant, that the plaintiff was to pay the note in suit, held by him against the defendant, as part of the purchase price of the land. If this conception of the agreement be correct, and, as we have said, we have no doubt of its correctness, the note was not paid. There was, indeed, an agreement on the part of the plaintiff to turn it in on the land trade to the defendant, or, in other words, in accordance with the terms of the agreement to take the land in payment of the note. That was all ; as a matter of fact the note was not paid. If paid, with what was it paid? The land was not conveyed to the plaintiff. The agreement was not carried out. The agreement was verbal, was within our statute of frauds, and was binding on neither the plaintiff nor the defendant. The words of our statute are, "any contract for the sale of lands." Rev. Stat., sect. 2513. "But it is not only contracts for the *sale* of land which are intended to be embraced ; for all the cases show that a *purchase* of land is as much within the statute as a sale of it, the policy of the law being not only to protect owners of land from being deprived of it without written evidence, but also to prevent a purchase of land from being forced by perjury and fraud upon one who never contracted for it." Browne on the Statute of Frauds, sect. 263. It is added by the author : "The effect of the provision, as expounded by the courts, is to render unavailing to the parties, as the ground of a claim, any contract, in whatever shape it may be put, by which either of them is to part with any interest in real estate." The agreement on the part of the plaintiff to buy the defendant's land in accordance with the terms of the agreement could not be enforced against the plaintiff. As we have seen, the agreement as to the note can not be regarded as a payment of the note, because it was part of the bargain for the land ; such bargain being to pay so much money, and, in addition thereto, the note

for the land. The agreement as to the note cannot be enforced any more than the agreement as to the payment of money could be enforced. The agreement as to the note was not an executed contract; so far from requiring the action of a court to disturb it, it requires the action of a court to enforce it. The agreement was executory. Being within the statute of frauds the agreement cannot avail either party as the ground of a claim against the other. Being executory the agreement did not enforce itself. The agreement had not of itself the effect of paying the note. If we are correct in our views as to the agreement between the parties touching the note in suit, the rule approved in *Galway v. Shields* (66 Mo. 314), has no application to this case. That rule is that no action can be maintained to recover back money or property, which has been paid upon a verbal contract for the purchase of land, if the vendor is willing to execute the contract on his part. In this case the plaintiff did not pay the note on the contract for the purchase of the land, he is not seeking to recover anything paid by him on that contract, but, on the contrary, the defendant is seeking to enforce the contract. In our opinion the evidence failed to show that the note in controversy had been paid, and the court should have so instructed the jury.

Judgment reversed and cause remanded. All concur.