MURRAY H. DAVIS v. WILLIAM HOLLOWAY and S. PRICE SMITH: WILLIAM HOLLAWAY, Appellant.—295 S. W. 105.

Division One, May 24, 1927.

**1. CONTRACT: Oral Agreement Relating to Land: Counterclaim.** An agreement between the legal holder and the maker of a note secured by a lien on land that the holder would buy in the land, convey it to the maker in order to enable him to obtain a larger loan, discharge a prior deed of trust and pay the balance of the loan to the holder, is one for the sale and conveyance of land, and being oral the contract comes within the Statute of Frauds; and being one of that character the maker, when sued on the note, cannot maintain a counterclaim for damages for its breach, or use it as a defense, in the absence of performance on his part.

**2. ———: ———: Performance.** In an action at law, based on an oral agreement pertaining to the sale and conveyance of land, nothing short of full performance on the part of the party relying upon it will take the case out of the Statute of Frauds.

**3. ———: ———: Character: Performance: Proof.** To take an action at law out of the Statute of Frauds the acts done in performance of the oral contract on which it is based should be clear and definite, and referable exclusively to the contract, and the contract itself should be established and shown to be clear, definite and unequivocal in its terms. And where the party relying on the oral agreement as the basis of his claim for damages does not make clear all its terms, does not show performance, and does not show readiness or ability to perform, he cannot recover.

Corpus Juris-Cyc. References: Contracts, 13 C. J., Section 977, p. 776, n. 96. **Frauds, Statute of,** 27 C. J., Section 165, p. 207, n. 53; Section 400, p. 315, n. 34; Section 404, p. 318, n. 69; Section 429, p. 347, n. 41; p. 348, n. 42; p. 349, n. 53.

Appeal from Mississippi Circuit Court.—*Hon. Frank Kelly,* Judge.

AFFIRMED.

*James A. Boone* and *J. M. Haw* for appellant.

(1) The contract set up in appellant's answer is not within the Statute of Frauds, and it was error to exclude testimony tending to prove it, and as a corollary thereto it was error to give the instruction offered by respondent which took that issue from the jury. Bird v. Blackwell, 135 Mo. App. 23; Sloan v. Paramore, 181 Mo. App. 611; Richardson v. Champion, 143 Mo. 545; Rose v. Bates, 12 Mo. 51. The counterclaim of appellant was for damages for breach of his contract, and even if the contract could not be specifically enforced, as coming within the Statute of Frauds, yet that fact does not preclude a recovery or a breach of the contract when one party has per-

formed his part, or partly performed it.  Bird v. Blackwell, 135 Mo.
App. 23; Wright v. Cobb, 229 S. W. 172; Parker v. Niggeman, 6
Mo. App. 547; Leahy v. White, 123 Mo. 217; Thierry v. Thierry, 249
S. W. 946.  (2)  Appellant's counterclaim sufficiently pleads a con-
tract between the parties.  The matters agreed to are clear and de-
finite.  It was agreed that:  The first deed of trust was to be fore-
closed; respondent was to bid the property in and transfer it to ap-
pellant; appellant was to secure a new loan of $16,000, discharge the
debt evidenced by the $7,000 note, secured by first deed of trust, pay
the balance on the $13,000 note, give a second deed of trust on this
land and a first on other lands owned by him to secure all of the
balance of the indebtedness to respondent, the time of payment be-
ing extended.  The evidence of appellant fully supports and proves
these allegations and is not denied.  If respondent felt that the agree-
ment set out in the counterclaim was not sufficiently specific, his
remedy was a motion to make more definite and certain or a demur-
rer.  If there was any merit in such contention respondent waived it
by answering over to appellant's counterclaim.  State ex inf. v. Ark.
Lumber Co., 260 Mo. 283; Boyajian Bros. v. Reinheimer, 229 S. W.
443; Peterson v. Casualty Co., 249 S. W. 149.  (3)  The uncon-
tradicted evidence of appellant shows a meeting of minds on the es-
sentials of the contract.  In ruling upon the demurrer to the evi-
dence, the evidence is to be viewed in the light most favorable to
claimant, giving him the benefit of every legitimate inference to be
drawn therefrom.  Yost v. Atlas Cement Co., 191 Mo. App. 422;
Dority v. Railway, 188 Mo. App. 365; Booker v. Railway Co., 144
Mo. App. 273.  (4)  Appellant's action is based on the damages aris-
ing from respondent's agreement and conduct depriving appellant
of the opportunity and ability to meet his obligations, by using the
land as a means by which to raise the money to pay off the obliga-
tion evidenced by the note secured by the first deed of trust and this
and his other resources to obtain enough money to discharge the
balance of the debt against the 320 acres.  The agreement of respon-
dent to convey to appellant after purchasing at the foreclosure was
a mere incident.  If respondent had bid the full value of the land and
refused to convey, appellant would not have been damaged and would
have had no cause of action as the surplus over the amount of the
first incumbrance would have been applied to the note sued on.  If,
on the other hand, respondent had attended the sale, refused to bid
and permitted the land to be sold to some one else for less than its
value, appellant's cause of action would have been the same as it is
now.  Sloan v. Paramore, 181 Mo. App. 611.  This case is clearly
within the principle of those cases that hold that an action will be for
breach of contract whose subject-matter relates partly to an agree-

ment within the Statute of Frauds, but is partly distinct therefrom. Salway v. Shields, 66 Mo. 313; Parker v. Niggeman, 6 Mo. App. 546; Bird v. Blackwell, 135 Mo. App. 23; Chamberlain v. Ft. Smith Lbr. Co., 179 S. W. 740; Scott v. Lewis, 177 Mo. App. 8.

*Scarritt, Jones & Miller* for respondent.

(1)  Appellant's assignment of error does not specifically point out the evidence, the exclusion of which is claimed as error. Such an assignment of error is too general in terms to warrant the attention of court and counsel. Hayes v. McLaughlin, 217 S. W. 262; Lorton v. Mo. Pac. Ry. Co., 306 Mo. 125; Doody v. California Woolen Mills Co., 274 S. W. 692; Christine v. Luyties, 280 Mo. 431; Maloney v. United Rys. Co., 237 S. W. 512. (2)  Appellant's counterclaim does not plead a contract between the parties. The terms are indefinite and the acceptance of respondent as pleaded is entirely different from the offer of appellant as pleaded. Consequently the counterclaim fails to state a cause of action. County of Cole v. Trust Co., 302 Mo. 235; State ex rel. v. Robertson, 191 S. W. 991; Strange v. Crowley, 91 Mo. 287; Green v. Cole, 103 Mo. 76; Wesson v. Horner, 25 Mo. 81. (3)  The evidence utterly fails to show a meeting of the minds of the parties in an agreement complete and definite in its terms. The court will not undertake to evolve a contract out of conversational statements so general that the court and jury would be put to the necessity of supplying many of the material details of a complete agreement. Stone v. Trust Co., 150 Mo. App. 344; Gray v. Ry. Co., 143 Mo. App. 251; Wesson v. Horner, 25 Mo. 81. (4)  The evidence fails to show either performance or tender of performance by appellant of the alleged contract, or even his ability to perform same, and the trial court properly directed a verdict for respondent on the issues made by appellant's counterclaim. Choteau v. Russell, 4 Mo. 553; Cress v. Blodgett, 64 Mo. 449; Browning v. Ry. Co., 188 S. W. 143; Cornett v. Best, 151 Mo. App. 551; Curtis v. Sexton, 142 Mo. App. 190. (5)  The alleged contract relied upon by appellants was an oral contract for the sale and conveyance of land, and therefore unenforceable, being within the provisions of the Statute of Frauds. Taylor v. Von Schraeder, 107 Mo. 206; Allen v. Richard, 83 Mo. 55; Wendover v. Baker, 121 Mo. 273; Foster v. Ross, 77 S. W. 990; Largey v. Leggat, 75 Pac. 950. (6)  Even if it should be held that the making of the oral contract in question was properly alleged and proved and that appellant had partly performed same, appellant could not recover, for part performance could not take the contract out of the operation of the Statute of Frauds, this being an action at law. Smith on Law of Fraud, sec. 348; Nally v. Read-

ing, 107 Mo. 350; Scharff v. Car Co., 214 Mo. App. 662; Hillis v. Rhodes, 205 Mo. App. 449; Sursa v. Cash, 171 Mo. App. 403; Ver Steeg v. Fruit Co., 158 Mo. App. 129; Chenoweth v. Pac. Exp. Co., 93 Mo. App. 191; Smith v. Davis, 90 Mo. App. 538.

LINDSAY, C.—The plaintiff declared upon a promissory note in the sum of $13,000, dated March 15, 1918, due five years after date, and executed by defendant William Holloway and one E. Lindsay Brown, payable to the order of defendant S. Price Smith, and pleaded the endorsement and delivery of the note to plaintiff, for value, before maturity, and presentation of the note at maturity and default in its payment.

Defendant, William Holloway, in his answer, admitted the execution of the note, and that certain payments thereon had been made as alleged in the petition. He set up, by way of counterclaim, that the note sued on was given as part of the purchase price of 320 acres of land in New Madrid County, and was secured by a lien thereon; that the remainder of the purchase price of said land consisted of cash and a first deed of trust on said land amounting to $7,000, the payment of which had been assumed by him and his co-purchaser, said Brown; that they afterward sold and conveyed the land to one Cain, who assumed the payment of the note in suit, and of the note for $7,000 secured by the first deed of trust; that said Cain became and was insolvent, and made default in the payment of all his debts; that when the note became due, said Brown was also insolvent; that when the note became due, he, defendant Holloway, was unable to pay the same on account of the financial depression then prevalent; that "thereupon, in consideration of defendant's agreement to secure a new first loan of $16,000 on said land, discharge the first deed of trust, pay the balance of said $16,000 to plaintiff, and to give plaintiff additional security for the remainder of the debt, plaintiff agreed to extend the time of payment of the debt evidenced by the note sued on, and to cause said land to be sold under the first deed of trust, buy the land in, and convey the title to this defendant in order to enable him to carry out said agreement and obtain said loan; that in pursuance of said agreement, plaintiff and defendant negotiated said loan; that pursuant to said agreement, plaintiff caused the holders of the first deed of trust to sell the said land under the terms of said deed of trust, and this defendant relying on the promises and agreement aforesaid, did not attend said sale, and plaintiff was the sole bidder and purchased said land at said sale for the amount due on the first deed of trust, to-wit, $7,500, when in truth and in fact the reasonable market value of said land was $24,000; that afterward when this defendant, having arranged for a loan of $16,000 on said land,

was ready and able to carry out his part of said agreement, and, relying upon plaintiff's agreement as aforesaid, requested plaintiff to convey said land to this defendant, plaintiff refused to comply with his part of said agreement, and retained the land, and demanded full payment of the note in cash; that if plaintiff had not made such agreement, defendant would and could have attended the sale, and procured a purchaser who would bid the market value of said land, and said debt would have been entirely paid; that by reason of plaintiff's breach of the contract, defendant had been damaged in the sum of $16,000 for which he asked judgment.

It is not necessary to notice the separate answer of S. Price Smith, further than to say that he admitted the execution and delivery of the note, and asked that proceedings against him be stayed, pending the recovery of judgment by defendant Holloway, on his counterclaim.

The reply was a denial of the matters set up in the counterclaim, and a denial of the agreement therein set up, with the plea that, if such agreement was made, it was within the. Statute of Frauds, as one not to be performed within one year, was also a contract for the sale of lands, and was not in writing. The reply also averred that the alleged agreement was not based upon a good, sufficient and valuable consideration.

The plaintiff objected to the introduction of any evidence under the counterclaim of defendant Holloway upon the ground that the counterclaim did not state facts sufficient to constitute a cause of action. This objection was overruled, but the court sustained plaintiff's objection to the introduction of any testimony by defendant S. Price Smith, on the ground that his answer did not state facts sufficient to constitute a defense.

At the close of all the evidence the court gave plaintiff's peremptory instruction against defendant Holloway, upon his counterclaim. The other instructions given for plaintiff submitted the issues as to the ownership of the note by plaintiff, as an endorsee for value, and the presentation of the same for payment when due against the makers, and defendant Smith, as endorser. The court refused defendant's instruction submitting the issue under said counterclaim. Other instructions asked by defendant and refused do not enter into the issues made here.

There was a verdict in favor of plaintiff against defendants Holloway and Smith; and defendant Holloway alone appealed. The only assignment of error seriously insisted upon is directed against the action of the court in respect to the counterclaim of the appellant, Holloway. The only testimony offered to sustain the counterclaim is the testimony of the appellant. He testified to several conversa-

tions had by him with plaintiff about July, 1922. His testimony is that he told plaintiff he had no cash, but had other property, unencumbered real estate, which he was willing to give plaintiff as additional security. On his direct examination, speaking of a conversation with plaintiff in July, 1922, he testified: "At this time in my office Mr. Davis and I talked over the situation, I just reiterated to him what I said about not having cash to pay it, and I there told him I would give him all the money I could realize out of the loan on the land and then I would give him a first mortgage on the Smith property and an additional mortgage on two thousand acres of land I had in Taney County, and I further offered him one hundred and sixty acres unencumbered land I had in Lawrence County, Arkansas; that was after he introduced himself as a good Methodist and brother member of the board of stewards at his church; and he told me it would be necessary to get rid of judgments against Mr. Cain on that land and sell it under the first mortgage, and he would go ahead and sell it under that first mortgage, buy it in and allow me to take that land and give me three years time on it, with this additional security, on the basis I have just stated; I never saw Mr. Davis any more until after the foreclosure of that land; I never went to New Madrid to look after it. The conversation closed when Mr. Davis left my office. I never did anything with reference to the sale under the first deed of trust or arranging to bid on it or having others to bid on it. I relied on Mr. Davis's statement entirely."

He further testified: "Mr. Davis told me that there was a loan already approved on this piece of land for $16,000. The proceeds of the loan were to be paid to him and the balance due on the notes. I was to give him first mortgage on the 320 acres of land and a first mortgage on the 2,000 acres in Taney County and 160 acres in Lawrence County. Mr. Davis was to deed the land to me after the sale, and I was to give him a deed of trust. I beg your pardon—the $16,000 was to be the first mortgage and the second mortgage was to be given to Mr. Davis, and a first mortgage was to be on the land for the loan. The other property was 2,000 acres in Taney County, Missouri, and 160 acres in Lawrence County, Arkansas. I was ready, willing and able to carry out that agreement, had Mr. Davis carried out his part. The next conversation I had with Mr. Davis with reference to this agreement, he demanded cash in payment of the notes."

On cross-examination he testified as follows: "The conversation with Mr. Davis was some time in July, 1922, just prior, I think, to the sale of the land. I think Mr. Davis came to my office a day or so before the land was sold. It was in the office of the Mississippi County Elevator Company. I think I met Mr. Davis once before, previous to that time. In Mr. McDowell's office during the same visit he

was here, the first time I ever met him, perhaps. I think he was here early in July, and then went away and stayed a week or so, I can't recall how long, and then came back. I think I saw him in Mr. McDowell's office. Think it was in July. Do not remember whether I saw him before that or not. I saw him again in my office before the sale. I do not know when I saw Mr. Davis again. Don't know whether it was after he got back from the sale a day or so, or just how long it was; very recently after the sale. I did see him frequently walking around town. I might have talked with him a dozen times, perhaps more than three times. Did not keep a memorandum of how many times. Mr. Davis told me he was going to sell the land and said he would buy it in and transfer it to me on the conditions I have stated. I did not know it was advertised. I knew it was going to be sold a day or two before it was sold. That is all I know about it."

Further on he summarized the terms as follows: "The plaintiff agreed to extend the time of the payment of the debt, evidenced by the note sued on, and cause said land to be sold under the first deed of trust, buy the land in and convey the title to me. That is the heart of the agreement."

Further in his cross-examination he said: "I know of no paper setting forth the terms of any contract between Mr. Davis and me. I never made any and, if he made one, I never saw it. He never delivered any to me. I never paid Mr. Davis anything on this indebtedness, nor for any extension of any note. I sold the land to Mr. Cain in March, 1918, right soon after we bought the note. I conveyed it to him by a general warranty deed, or it may be a quitclaim. He was already in possession, having rented it from Mr. Smith, and I left him in possession, and he was in possession when the conversation I have talked about between Mr. Davis and myself took place. Mr. McDowell and Mr. Davis both told me the loan on this property was already approved, and I saw the agent of the loan company and they told me it was approved for $16,000. I refer to the agents of the Maxwell Investment Company, Mr. E. R. Johnson being one, and I think Mr. J. Cade Stewart is the other. I do not remember which came to me with a blank application and I told him I did not own the land, it had not been transferred to me and I did not want to sign an application on a piece of land that I did not have the title to, but as soon as I got possession, I would make application. I refused to sign the application at that time, because Mr. Davis would never agree after the land was sold to take this security I offered; it wouldn't make any difference to me if I couldn't get but half the money on a loan—(interrupted).

"I did not want to sign an application for a loan because—(interrupted).

"Q. Never mind what your reason was.

"I refused to sign the application for that reason. I paid out no money by reason of the application; none was to be paid out for signing an application. I said the interest was high and I thought I could get a cheaper rate of interest, if the land had been in my possession. The interest at the time was eight per cent, and I could have gotten a loan for much less and would have preferred to have made my own loan, if I had had the property in my name."

He introduced testimony to the effect that the land sold was of the value of $75 an acre.

The defendant does not charge fraud on the part of the plaintiff. His counterclaim is founded upon the alleged breach of an oral contract. The contract, as stated by him, is one for the sale and conveyance of land. At the time of the agreement, the title to the land was held by Cain, subject to the two mortgages and Cain was in possession. The agreement that plaintiff would buy the land and would convey the title to the defendant, was described by defendant as being of the heart of the agreement. It was not an incidental or separable part of the agreement, but was a vital and unseverable condition of the agreement. It was a contract within the Statute of Frauds. [Taylor v. Von Schraeder, 107 Mo. 206; Allen v. Richard, 83 Mo. 55; Wendover v. Baker, 121 Mo. 273; Foster v. Ross, 77 S. W. (Tex.) 990.] The contract being one of that character, defendant could not maintain an action at law for damages for the alleged breach. [Lydick v. Holland, 83 Mo. 703; Culligan v. Wingerter, 57 Mo. 241; Hillis v. Rhodes, 205 Mo. App. 439; Sursa v. Cash, 171 Mo. App. 396.] For the same reason defendant could not use the contract as a ground of defense or cross-action at law. [Delventhal v. Jones, 53 Mo. 460; Townsend v. Hawkins, 45 Mo. 286, 289; Schlanker v. Smith, 27 Mo. App. 516.] This is so because there was not a performance of the contract on the part of defendant, which took it out of the statute. The rule followed in this State is that, in an action at law, nothing short of full performance on the part of one party will take the case out of the statute. [Nally v. Reading, 107 Mo. 350; Johnson v. Reading, 36 Mo. App. 306; Hillis v. Rhodes, 205 Mo. App. 439; Townsend v. Hawkins, 45 Mo. 289; Smith on the Law of Frauds, Section 348.]

To take a case out of the statute the acts done in performance of a contract should be clear and definite, and referable exclusively to the contract, and the contract itself should be established and shown to be clear, definite and unequivocal in all its terms. The testimony of defendant, given the most favorable construction, does not make clear all the terms of the agreement; or its performance by defendant shown, nor ability and readiness to perform.

In pleading his counterclaim, defendant alleged his own agreement was to procure "a new first loan of $16,000 on the land." In his testimony, he says in one place: "I told him I would give him all the money I could realize out of the loan on the land." He testifies that plaintiff told him there was a loan already approved on this land, for $16,000, and that the agents told him a loan of $16,000 was approved by the loan company; but his testimony as to why he did not sign the application for the loan is not easily understood on the theory that he was ready and willing to carry out the contract. He says he refused to sign the application because the plaintiff would never agree, after the land was sold, to take the security offered, but he also says he told the agent of the loan company he would not sign the application because the title had not been transferred to him, and that he would sign the application as soon as he got possession. He shows that he objected to signing the application because the interest was high, and said he thought he could get a cheaper rate of interest if he had the property in his own name. In his testimony as to the agreement, he made no mention of the rate of interest which was to be paid by him to the plaintiff, upon the difference between the amount of the proceeds of the proposed loan, and the total of the indebtedness which would be due to the plaintiff, after plaintiff had paid the amount of the first mortgage. The defendant's evidence fails to show that there was a meeting of the minds of plaintiff and defendant upon an agreement clear and definite in its terms. His testimony is a statement of parts of conversations between himself and the plaintiff, without ever arriving at the complete terms of a clear and definite agreement, prescribing plainly what each party was to do.

Counsel for defendant urges that the agreement was one within the rule of those cases which allow an action for a breach of contract wherein the subject-matter relates partly to an agreement within the Statute of Frauds, and partly is distinct therefrom. Parker v. Niggeman, 6 Mo. App. 546, is one of these. That was an action at law for damages. That case, however, holds that where the contract was not enforceable by reason of the Statute of Frauds, yet if one party has paid out money under the terms of the contract and the party resisting performance has received benefits under the contract such as money paid to him or work done for him, his repudiation of the contract does not do away with those facts, and recovery may be had upon the basis of what has been done. In that case the plaintiff was seeking to recover his expenses and for loss of time, and his right of recovery was upon a promise, implied by law, which, while related in part to the subject-matter of the contract held to be unenforceable, was yet a promise distinct from the agreement

covered by the Statute of Frauds. Bird v. Blackwell, 135 Mo. App. 23, is another case. That was an action at law by a real estate agent for damages against one property owner who had refused to consummate an exchange of lands with the third party under an oral con-. tract of exchange, which had been entered into through the efforts of the plaintiff, at the request of the defendant. There was an agreement between the three that the third party should pay plaintiff his commission, and that he would not look to defendant therefor. The Court of Appeals held that the Statute of Frauds had no application to the agreement concerning the payment of the commission; and that though the oral agreement for exchange of properties was one which could not be enforced against the defendant in that suit, that fact did not deprive the plaintiff of his action for damages. In Sloan v. Paramore, 181 Mo. App. 611, the mortgagor of real estate to forego her right to redeem, in consideration of defendant's promise to buy the property at the trustee's sale, and to share the profits equally upon a resale of the property. The holding was that the contract was not one for a sale of the land, but was an agreement for the division of profits upon its resale.

The defendant's counterclaim is not founded upon the theory of a contract to be implied from the facts and circumstances attending the transaction, but directly upon the alleged breach of an actual oral agreement. The case is not within the rule of the cases mentioned. To sustain the counterclaim upon the theory there was an actual as distinguished from an implied agreement, it would be necessary to supply terms to make it complete which it is not shown the parties made.

The court did not err in its action withdrawing the counterclaim. There is no other question in the case and the judgment in favor of the plaintiff is affirmed.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.*, not sitting.