**Charley JOHNSON, Respondent,**

v.

**Arthur F. C. BLASE and Ethel Blase,**

**Appellants.**

**No. 46964.**

Supreme Court of Missouri,
Division No. 1.

March 9, 1959.

Rehearing Denied April 13, 1959.

Albert E. Hausman, St. Louis, for defendants (appellants).

John P. Sullivan, St. Louis, for respondent.

WESTHUES, Judge.

Charley Johnson filed the present suit in the Circuit Court of the City of St. Louis, Missouri, to have the court by decree vest title to property, known as 1522 North Garrison Avenue, in the name of plaintiff. Plaintiff Johnson also asked for damages in the sum of $10,000. The defendants were Arthur F. C. Blase and Ethel Blase, his wife. Plaintiff's claim was based on the theory that the defendant Arthur F. C. Blase had agreed to purchase the property at a foreclosure sale for plaintiff's benefit. Defendant Blase denied having made any such contract and claimed he purchased the property after a foreclosure sale; that he was the legal owner and that plaintiff had no interest therein. The trial court decreed title to be in plaintiff and required the defendants to convey title to him. The court further found that plaintiff had overpaid the defendant Arthur F. C. Blase in the amount of $235.27 and entered judgment for that amount in plaintiff's favor. Defendants appealed from the judgment entered to this court.

Since Ethel Blase is only a nominal party to the suit, we shall often use the singular "defendant" and thus refer to Arthur F. C. Blase.

The evidence justifies the following narration of events giving rise to this lawsuit.

Prior to 1950, Fred Ray and plaintiff Charley Johnson were the owners of the property in question. This property was incumbered by two deeds of trust. The second deed of trust was dated March 12, 1948, and was given to secure monthly installment notes of $36.95 each. The notes were made payable at the office of Francis and Ruth, Realtors, 110 North Seventh Street. Because of default in the payments of the notes, E. D. Ruth, Jr., trustee in the second deed of trust, had published a notice of a sale of this property. The sale took place on May 11, 1950. The property was bid in by Francis and Ruth, Realtors. The trustee, by deed, conveyed title to Emma Coates, a straw party. Later, on May 22, 1950, Emma Coates conveyed title subject to a deed of trust securing a note of $2,000 to A. J. Potter, a straw party for defendant. On May 26, 1950, defendant paid to the firm of Francis and Ruth the sum of $839 which represented the balance due on the notes secured by the second deed of trust plus the interest due on the first deed of trust, and $9.30 for incidental expenses, or the total sum paid by defendant was $848.-30. Potter later (on May 22, 1951) conveyed title to Katheryn Winking, a straw party for defendant Blase. In this deed, no mention was made that it was subject to a deed of trust. In June, 1954, Katheryn Winking conveyed title to defendant Arthur F. C. Blase and his wife. The evidence disclosed that Fred Ray had, prior to 1950, moved to the State of California. Plaintiff Johnson was an employee of the Frisco Railroad in the capacity of cook on its dining cars running between Tulsa, Oklahoma, and Fort Worth, Texas, and therefore was absent from the city much of the time.

Plaintiff testified that after he received notice of the foreclosure, he went to the defendant for advice as to what to do. Note his evidence:

"Q. * * * Why did you go to see Arthur Blase? A. About the deed—second deed of trust.

"Q. All right. What about the second deed of trust? A. Well, I

talked to him and told him what I wanted to do and he said he would take it over for me and get it back paid out, and after I paid him he was to give me the title—the deed back to the property.

"Q. I didn't understand that last statement. A. He was to take it over and pay the second deed of trust or the mortgage, and after I paid him everything what I owed him, he was going to give me the clear title to the property back.

"Q. All right. Now, after you paid him everything that you owed him, he was to give you clear title to the property? A. Yes."

The following letter from defendant Blase to Francis and Ruth, Realtors, was offered in evidence:

"Arthur F. C. Blase
"Attorney and Counselor at Law
"601–7 International Building
"722 Chestnut Street
"St. Louis 1, Mo.

"April 20, 1950

"Francis & Ruth, Realtors,
"Southeast Corner, Seventh & Chestnut,
"St. Louis, Missouri.

"Attention: Mr. E. D. Ruth, Jr.

"Dear Sirs:–

"I explained to Mr. Charlie Johnson your conversation with me regarding the pending foreclosure of the Second Deed of Trust on property at 1522 North Garrison Avenue. I told him that the purpose of this sale was to clear the title to the property for him so that he might obtain entire title to the property, and that at the sale your office would purchase the property for his benefit and thereupon he would execute a new second deed of trust on the property for the debt now due under the second deed of trust less the delinquencies. When the sale is consummated, I will advance to you for Mr. Johnson the cost of foreclosure plus the amount of the delinquencies under the second deed of trust so that Mr. Johnson will be able to start out again with your office without any delinquencies.

"Please let me know after the sale the amount due you and I will remit to you immediately.

"With my thanks to you for your cooperation in this, I am

"Yours very truly,

(Signed) "Arthur F. C. Blase"

Defendant, on May 26, 1950, paid to Francis and Ruth the sum of $848.30. A copy of the bill (dated May 24) showing the items due was introduced in evidence (Exhibit C). The account was made out to A. J. Potter "c/o Arthur Blase" who paid the bill. The items of the account were noted as follows:

"Balance due on Second Deed of Trust of Fred Ray and Charley Johnson recorded in Book 6692 Page 505 as per statement of May 16, 1950 ............................ $839.00

"(Additional Charges)

| "Recording Trustee's Deed | $2.70 | |
|---|---|---|
| Acknowledgins Warranty Deed | .50 | |
| Feed Paid 'Straw' | 5.00 | |
| Revenue Stamps | 1.10 | |
| | | 9.30 |

"Balance due Francis and Ruth, Realtors.... $848.30"

Mrs. Ruth Wooley, cashier for Francis and Ruth, testified that Johnson had, prior to 1950, made payments on the indebtedness on the property, but, in 1950, defaulted in making payments; that the property was foreclosed and that defendant Blase, after foreclosure, had paid the amount due on the second deed of trust, interest due on the first deed of trust, and other expenses incurred by reason of the sale, amounting to a total, as above-stated, of $848.30, to discharge the second deed of trust; that later, at maturity of the first deed of trust, it was paid by the defendant. She further testified that after the foreclosure no further payments were made by plaintiff to Francis and Ruth.

Mrs. Shirley Wenzelburger, employed as secretary in the office of Francis and Ruth, testified that she typed the deed conveying the property from Emma Coates to A. J. Potter; that the name of Charley Johnson had been typed in as the grantee but the name had been erased; why, when, or by whom, she did not know. This is the deed by which the title was conveyed to A. J. Potter, defendant's straw man. This witness further testified that Blase was at the office and talked with Mr. Ruth about the foreclosure and that during the conversation the following occurred:

"Mr. Sullivan: Q. Just say what was stated. A. It was stated that after the foreclosure the property would be put from Emma Coates, our straw party, into Charley Johnson's name.

"Q. Now, did Mr. Ruth say that that's what he wanted? A. That's what we were working for all along.

"Q. And that's what—and Mr. Blase, did he agree to that? A. He said that he would take care of it.

"Q. All right. Now, when that was done, or before that was done did Mr. Ruth have the warranty deed that you typed up from Emma Coates? A. Yes, he had the warranty deed and he gave it to Mr. Blase.

"Q. Before he gave it to Mr. Blase, was there any discussion at all? In other words, was the discussion you just referred to, was that had— A. That was the discussion.

"Q. Before he handed the deed— A. Before he handed the deed to him.

"Q. —— * * * to Mr. Blase? A. Mmm-hmm.

"Q. All right. Now, when you typed up the deed—referring to this copy again, when you typed up the deed, you showed the name of Charley Johnson as the grantee, didn't you? A. Yes."

Plaintiff testified that after the foreclosure, he made monthly payments to defendant; that he had a tenant and that he (plaintiff) instructed the tenant to pay the rent due plaintiff to the defendant; that defendant agreed that when the payments made in this manner were sufficient to pay what he owed Blase, the property would be clear of the indebtedness and would be in his (plaintiff's) name. Plaintiff further testified, and it was not denied, that after foreclosure, he had a new furnace installed at a cost of about $550 and had the house wired at a cost of $509. His further testimony was that in 1956, he engaged a contractor to have the doors and windows replaced and new floors installed at a cost of over $3,000; that the contractor began work but stopped when, on investigation, he found that title to the property was in defendants' names. The evidence of the contractor corroborated plaintiff on this point. Plaintiff testified that that was the first he knew that the defendant had taken title in his and his wife's name and that they claimed to be the owners.

Receipts of payments made by plaintiff to the defendant were introduced. Some of these read "for rent" while others read "on account of the property," and still others read "on account of loan."

Defendant was the only witness testifying for the defense. He denied that he represented the plaintiff as an attorney; that the plaintiff came to him wanting to refinance the second deed of trust; that he, the defendant, agreed as per his letter of April 20, 1950, to pay for the expenses of the foreclosure and to take a third deed of trust as security if plaintiff could find someone to take the second deed of trust; that he recommended plaintiff to a loan company but plaintiff was unable to find anyone to make the loan; that he (defendant) purchased the property after the foreclosure from Francis and Ruth and paid them what they asked; that thereafter, plaintiff wanted to remain in the house as a renter and that all payments made by plaintiff were for rent. Defendant said that he had

made minor repairs and also paid $100 for repairs on the roof on the said property.

■ This being an equity case, it is reviewable de novo on appeal. A trial judge is in a better position than an appellate court to judge the credibility of the witnesses who appear in the trial court to testify. In this case, the circumstances surrounding the transactions and the conduct of the parties tend to support plaintiff's theory more than they do the defendants'. On the merits of the case, we are inclined to hold that the trial court was right.

■ Defendant has presented a number of legal questions which he claims bar plaintiff's action. We shall consider them briefly. In the first three points briefed, defendant says that the statute of frauds, Sections 432.010 and 456.010 RSMo 1949, V.A.M.S., is applicable to this case and plaintiff cannot enforce his alleged oral contract. Defendant cites the case of Davis v. Holloway, 317 Mo. 246, 295 S.W. 105, as authority. In that case, the court applied the statute of frauds as against defendant's counterclaim because, as the court said, 295 S.W. loc. cit. 108(1, 2), "This is so because there was not a performance of the contract on the part of defendant, which took it out of the statute. The rule followed in this state is that, in an action at law, nothing short of full performance on the part of one party will take the case out of the statute." In the case before us, the trial court found that plaintiff had fully performed his contract. All that was left to be done was for the defendant to perform his part and that was to convey the property to plaintiff. So, on the authority of the case cited by defendants, the point is ruled against them. See also 37 C.J.S. Frauds, Statute of § 252 (2) p. 765, and cases there cited.

■ In the fourth point, defendant says that the evidence failed to show any definite contract between plaintiff and the defendant. We see no merit in this contention. The evidence of plaintiff, the letter of the defendant, and the evidence of the cashier and the secretary of Francis and Ruth, Realtors, clearly establish the nature of the agreement and what each party was to do. The trial court had no difficulty in determining what the contract was. The issue was whether the plaintiff's evidence was to be believed or whether the defendant was right in his contention.

■ In the fifth point, defendant says that the court erred in entering a decree for plaintiff for the reason that by the pleadings plaintiff charged that defendant was the real estate agent, money lender, and attorney for the plaintiff. It is claimed that the evidence showed that defendant was a money lender to plaintiff. The letter of the defendant (set out supra) would incate that defendant was giving some legal advice. But, we deem it immaterial whether the defendant acted as a money lender, real estate agent, or attorney. If the evidence of plaintiff and his witnesses be true, it matters not in what capacity defendant acted since the same law would be applicable. Suppose the defendant did act in the capacity of a money lender. If plaintiff's evidence be true, defendant cannot be permitted to take and retain the fruits of plaintiff's performance and refuse to perform his part of the contract. Defendant cited Poole v. Campbell, Mo., 289 S.W.2d 25, but did not point to any ruling therein which tends to support his contention. Having read the opinion, we fail to see wherein it sustains defendant's position. We rule that the decree entered by the trial court is supported by both the pleadings and the evidence.

■ This is an equity case. Plaintiff asked for specific and general relief. He also prayed for damages. It is a rule well established that where a court of equity takes jurisdiction, it will give complete relief to the parties. 30 C.J.S. Equity § 104, p. 506. We, therefore, rule that defendant's point six, wherein he says the trial court erred in determining an accounting

and that defendant owed plaintiff $235.27, is without merit.

The other points briefed, that the evidence of a contract is "uncertain, vague and incomplete," that "there was no performance to take this case out of either Statute of Frauds or Statute of Uses," that "there is no fraud in this case," have all been answered under other points which we have fully considered.

As mentioned above, the trial court in this case was in a better position to determine the weight of the evidence and the credibility of the witnesses than this court reading the record. However, in our opinion, as stated supra, the evidence amply justifies the decree rendered by the trial court. It should be and is hereby affirmed.

All concur.