CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY v. STATE HIGHWAY COMMISSION OF MISSOURI, Appellant.—17 S. W. (2d) 535.

Division One, March 29, 1929.

*Edgar Shook* and *A. M. Meyer* for appellant.

422

*Luther Burns, Henry S. Conrad, L. E. Durham* and *Hale Houts* for respondent.

424

LINDSAY, C.—This suit was brought by the railway company in the Circuit Court of Buchanan County to restrain the appellant State Highway Commission, and Pittsburg-Des Moines Steel Company, a co-partnership, from maintaining an alleged nuisance, and for abatement of such nuisance, and also for damages for injuries to respondent's property, alleged to have been caused by the construction of an overhead crossing of the state highway known as Route 8, over the tracks of the railway company.

The trial court granted the injunctive relief prayed for, with judgment for $1,000 as damages, against the Highway Commission, and dismissed the bill as to the other defendant, the Construction Company. The ground of the complaint is that insufficient drainage was provided, in the construction of the viaduct, thereby obstructing the flow of water at that point, rendering the track unsafe, creating a nuisance, and causing damage to the railway property.

On September 25, 1924, the Highway Commission made application to the Public Service Commission, for an order for the construction of a viaduct, or overhead crossing of the highway, over defendant's tracks at a point designated, and in accordance with plans submitted with the application. Upon a hearing, the Public Service Commission made its order for the construction of the viaduct in accordance with the plans submitted; ordered that the work of construction of the viaduct and its approaches be executed by the Highway Commission; made its order of apportionment of the cost; and fixed the sum of $13,000, approximately one-third of the total, as the reasonable and just proportion to be paid by the railway company. The Public Service Commission, by its order, also retained jurisdiction of the parties and of the subject-matter of the cause, for the purpose of making any supplemental orders therein, deemed just and proper. The order was made on January 6, 1925, was contested by the company in a proceeding of review, and the order was sustained (Chicago, R. I. & P. Ry. v. Public Service Commission, 315 Mo. 1108).

The plans submitted to the Public Service Commission showed the location of all tracks, buildings and structures about the place of crossing, the ground lines, the proposed grade line of the approaches of the highway, and the railroad tracks. Also, a sketch of the proposed structure was furnished. These plans, submitted to the railway company before and during the hearing before the Public Service Commission, while not expressly approved, were not objected to by the engineers and representatives of the railway. The contention of the railway company there, and on appeal in the review proceeding, was not directed against the sufficiency of the plans, but was grounded on the claim that an undue proportion of the cost was apportioned against the railway. The claim was that an apportionment against the railway of one-third of the cost of constructing the approaches to the viaduct, which were outside of the railroad right-of-way, was improper. On the appeal in the review proceeding, this court held that the approaches were a necessary part of the crossing, without which the viaduct was useless, and denied the claim that no part of the cost of the approaches should be apportioned against the railway. The Highway Commission caused the work of construction to be done. It was done in accordance with the plans submitted to and approved by the Public Service Commission. In June, 1925, heavy rainfall caused the waters of streams and surface water, to back up behind the embankment constituting the approaches leading to the overhead structure, and the water was forced over the railroad tracks causing damage thereto. There was obstruction of the water by reason of lack of outlets in the approaches from the overflow of certain streams, and flow of surface water. It is admit-

ted that a condition existed which required provision to be made for better drainage, and that damage was done to the railway property to the extent of $1,000.

Suggestion was made by the engineer of the railway company to the engineer of the Highway Commission that additional drainage should be provided, not embraced in the plans, and there was correspondence between the respective engineers. The chief engineer of the Highway Commission, by a letter of February 3, 1925, conceded that there was need of provision for drainage which had not been contemplated by the plans; and made suggestion of what would be proper to be done for providing additional drainage, and promised to make the necessary opening. Later, the work of construction of the crossing was begun, and there followed correspondence between the chief engineer of the Highway Commission and the representative of the railway company, and there was at least one conference between them, perhaps more than one, upon the question of providing for the necessary drainage. It appears from the evidence that the railway company was insisting that the entire expense of providing necessary drainage outlets should be borne by the Highway Commission. Several plans were suggested by the chief engineer of the Highway Commission with an estimate of the cost. The Highway Commission, in several communications, insisted that the matter be presented to the Public Service Commission, either by plan to be submitted by the railway company or by one to be submitted by the Highway Commission. No agreement of any kind was reached. This, it appears, was due to the insistence of the railway company that no part of the cost would be assumed by it. These communications between the railway company and the Highway Commission, begun about the time the order of the Public Service Commission was made, continued after the work of construction was begun, and after the time when there was damage by reason of the construction of the approaches. The terms under which the Highway Commission secured permission to erect a crossing and permission to use the right-of-way of the railway company are not shown in the testimony. Reference is made to securing such permission, but without stating the terms, in a communication from the chief engineer of the Highway Commission to the engineer of maintenance of way of the railway company, in a letter dated August 21, 1925. In that letter the engineer of the Highway Commission suggested that as the matter was still under the jurisdiction of the Public Service Commission, the Highway Commission could not make a change in the structure without its approval, and suggested that the railway company take up the matter of drainage with the Public Service Commission. In a letter dated September 15, 1925, the chief engineer of the Highway Commission wrote to the superin-

tendent of the railway company that if the railway company did not care to take up the matter of drainage with the Public Service Commission, yet would furnish the Highway Commission with a scheme of drainage which the representatives of the railway thought satisfactory to take care of the water at that place, the Highway Commission would either approve the same, or furnish some scheme of its own and submit both to the Public Service Commission. This letter further suggested that as they had been unable to reach any agreement covering the cost of drainage, it was believed that the only satisfactory way to settle the matter was to take the thing to the Public Service Commission. The suit was filed on September 16, 1925.

The railway company, in its petition, alleged that the Highway Commission was engaged in constructing the highway known as Route 8, and a crossing of plaintiff's road by means of an overhead structure; and had contracted with the Steel Company for the construction of the same; that in constructing the north approach, defendants had constructed an embankment without providing any means of drainage for the surface water falling on approximately 700 acres of land on the east side of the embankment and north of the railroad, thereby obstructing the flow of the water, and causing large quantities to be collected in lakes and ponds, and thrown upon the railroad, causing great damage and constituting a continual and permanent nuisance; that in June, 1925, as a result of heavy rains, a large quantity of water was collected, and washed out plaintiff's roadway and track; that other rains falling thereafter, the construction of said embankment, caused the water to be "wrongfully diverted" from its natural course, forming ponds of water, which soaked plaintiff's roadbed, caused it to be soft and spongy, and rendered it unsafe for the operation of plaintiff's trains, and the carriage of passengers and property; and that unless defendants be restrained from maintaining such nuisance, and be required to abate the same, plaintiff would continue to be damaged.

The Highway Commission and the construction company filed an answer in three counts: The first count admitted formal matters and that the Commission was engaged in the construction of the highway and overhead structure, and otherwise was a general denial. The second count pleaded the making of the application to the Public Service Commission for the location and establishment of the overhead crossing, and that the plaintiff was made party to that proceeding, and filed answer thereto; that plaintiff appeared, and the application was heard by the Public Service Commission, and its order and report made and filed, authorizing the construction of the overhead crossing to be located and constructed in accordance with the plans submitted. The answer further pleaded

the taking of proceedings for review of the order; the affirmance of the order by the Circuit Court of Cole County, and the appeal therefrom to this court. The defendants alleged that by reason of the premises, the Circuit Court of Buchanan County was without jurisdiction to hear and determine the cause, and without jurisdiction over the subject-matter. By the third count defendants adopted the prior allegations of their answer, pleaded that in the proceedings before the Public Service Commission the plaintiff at no time objected to the plans or specifications of said overhead structure, and made no objection to the plans in the review proceeding; that the plaintiff offered no testimony before the Public Service Commission tending to show that the plan of the proposed structure was improper, or in any way objectionable to plaintiff; that prior to such proceedings, plaintiff's engineer approved the plan; that defendants, relying upon such approval of the plans by plaintiff's engineers, and upon plaintiff's failure to object to the plans, before the Public Service Commission, entered into contract with the Steel Company for the construction of said overhead crossing. Thereupon, the defendants alleged that the claim asserted in the plaintiff's petition is unjust and inequitable; that by reason of the approval of the plans by plaintiff's engineers plaintiff is estopped to assert the claim contained in the petition; that by reason of plaintiff's failure to object to said plans in the proceedings before the Public Service Commission, plaintiff is guilty of laches, and is not entitled to the injunction. The reply was a general denial.

This suit was filed in the Circuit Court of Buchanan County and the jurisdiction of that court was not challenged, upon the ground that the Highway Commission was subject to suit only in Cole County, as was done in State ex rel. Highway Commission v. Bates, 317 Mo. 696. The Commission appeared in this case and filed the answer referred to. The objection to jurisdiction of the Buchanan Circuit Court set up in the answer, is not upon the grounds of the holding in the Bates case. The contention made is, that by virtue of the exclusive power given by Section 10459, Revised Statutes 1919, to the Public Service Commission, and by the retention of jurisdiction by the Public Service Commission over the parties and subject-matter, for the purposes of making such supplemental orders as might be just and proper, the Public Service Commission had power to hear and determine the question of lack of drainage, and make appropriate orders, and thereby, the railway company had an adequate remedy at law before the Public Service Commission; and that an injunction will not be granted where there is an adequate remedy at law; that since the Public Service Commission had the power to grant relief—order such modification of the plan as

would afford adequate drainage—application to the Commission to that end was required.

Section 10459 provides: "The Commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of . . . a public road or highway by a railroad or street railroad . . . and to alter or abolish any such crossing, and to require, where, in its judgment, it would be practicable, a separation of grades at any such crossing heretofore or hereafter established . . ."

The Public Service Commission may provide for and regulate the alteration of such crossing whether they be by subway, grade or overhead. [State ex rel. M. K. & T. Railway v. State Public Service Commission, 271 Mo. 270.]

"It was entirely competent for the Legislature to delegate these functions to a trained body of experts, since they do not involve the exercise of exclusive power of lawmaking which a Legislature cannot part with." [State ex rel. St. Joseph R. L. & P. Co. v. Public Service Comm., 272 Mo. l. c. 650.]

The power to be exercised under the provision is the police power of the State, and its exercise is in the interest of public safety. [Chicago, Rock Island & Pacific Railway v. Public Service Commission, 315 Mo. 1108; State ex rel. Wabash Railway v. Public Service Commission, 306 Mo. 149.]

"The approaches are necessary parts of the crossing, without which the viaduct would not be a crossing; it would be a useless obstruction." [C. R. I. & P. Ry. v. Public Service Commission, 315 Mo. l. c. 1118.] See, also, State ex rel. Mo. Pac. Ry. v. Public Service Commission, 297 S. W. l. c. 49; State ex rel. M. K. & T. Ry. v. Public Service Commission, 271 Mo. 284; 9 C. J. 420, 421; 4 R. C. L. 194.

The safety to be conserved by the construction of viaducts is that of the public, traveling upon either the highway or upon the railway. The exclusive power given the Public Service Commission to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance . . . use and protection, imply recognition of physical conditions, to be taken into consideration in the manner of construction and use of the crossing, in the interest of the safety of the public.

Power to determine and prescribe the manner of installation, maintenance, protection and use of the crossing at the determined point in the interest of public safety, necessarily implies power to determine and prescribe conditions, adapted to the preservation of the public safety and applicable under the circumstances existing. The point of crossing and physical condition surrounding it, might or

might not be such, as in the interest of public safety, would require provision to be made against the action of water. The charge in plaintiff's petition is one of the action of water thrown upon the plaintiff's roadbed, and water which soaks plaintiff's roadbed causing it to become soft and spongy, thereby rendering it unsafe for the operation of trains and the carriage of passengers.

The question of drainage was not presented or considered by the Public Service Commission in passing upon these plans, but it was within the peculiar province of that body to consider that question or element of safety since the safety of the public using either the highway or the railway was the paramount purpose of installing the overhead crossing. By its order retaining jurisdiction of the subject-matter and of the parties, the Public Service Commission retained power upon the proper showing to amend the plans, and require the making of provision for adequate drainage at the crossing and its approaches. It was and is an engineering problem, directly related to the proper construction of the crossing and its approaches, in view of the existing physical conditions, and in the interest of public safety; and it was within the exclusive power of the Public Service Commission by the aid of its experts, to determine and prescribe the requirements as to drainage, necessary, in the interest of the safety of the public, whether passing the crossing by railway or upon the highway. Under the circumstances in this case, abatement of the alleged nuisance involves the making of such changes as will afford drainage, so that the safety of the public shall not be endangered— a matter to be addressed to the Public Service Commission as one properly and solely committed by law to that body. This is so, because the complaint is directed against the prescribed method of construction as resulting in danger to public safety, and the Public Service Commission, by statute, is given exclusive power, to determine and prescribe the manner of installation, a power, which in view of the paramount purpose of its exercise, includes power to determine and prescribe an installation and construction which will not imperil the safety of the public.

On behalf of the plaintiff it is argued that the Public Service Commission is not a court and has no judicial power, and that the question here involved is a judicial question, over which that Commission has no jurisdiction. That the Public Service Commission is not a court, and under our Constitution cannot be clothed with judicial power, is so clear, and has been decided so often that citation of authorities is unnecessary. But, the power of the Commission to abolish grade crossings and to require installation of an overhead crossing, is an exercise of the police power, and rests upon considerations of public safety. That its power in making orders of that character, rests, and must rest, upon considerations of public

safety, was held in State ex rel. Rutledge v. Commission, 316 Mo. 238. The hearing and determination of the application for the establishment of the crossing under consideration, was not the exercise of a judicial function, but the power of the Commission to bear and determine that question cannot be denied, and within that power is included the power to prescribe the conditions necessary to effect the purpose in view. The validity of the order made, became a judicial question in the review proceeding, but in the hearing before the Commission, a matter directly related to the main purpose, the question raised by this suit in equity was not presented. Under the allegations of the answer here, it was a question involving a public interest, the interest of safety; also, the respective rights of the parties were involved. Its pertinence to the main question before the Commission was shown by later developments and the question was raised by plaintiff's engineers, but not called to the attention of the Public Service Commission. If attention had been called to the fact that by reason of the physical surroundings, the plan did not provide adequate drainage, and as a result injury was done to plaintiff's tracks, and the safety of the public endangered, the consideration of that question thus related to the paramount purpose, would not have been the exercise of a judicial function.

At the time this suit was filed, plaintiff had an adequate remedy at law to procure the very relief here asked by injunction—an order of the Public Service Commission for the amendment of the plan of construction and correction of the conditions alleged as causing injury to plaintiff's tracks and consequent danger to public safety. In its alleged result, the question of inadequate drainage was directly related to, and a part of the subject committed to the Public Service Commission, exclusively. If the Public Service Commission had power to consider the question of drainage as one related to the public safety, as we hold it had, then it had power later, its attention being called to that subject, to consider that question and make the appropriate order. The fact that the Public Service Commission is not a court is not controlling or material. The important thing is the character of relief it could grant in the interest of public safety, and, in respect to a subject over which it was given exclusive power. The controversy between the respective engineers was one over division of cost of providing drainage. The Public Service Commission had the exclusive power to apportion the cost.

Counsel for plaintiff have cited cases of suits against cities, townships, and road officials as showing that a party specially injured by the negligent construction of a street or highway, or the creation of a nuisance in connection with the making of such an improvement, has a cause of action. We do not see the relevancy of these decisions to the question of the right to injunctive relief here under

consideration. Those were cases where the injured party was obliged, in the first instance, to go to a court for relief. No other tribunal or body was constituted by law to grant the particular relief asked.

Other cases are cited under the contention that the Commission had and has no jurisdiction over the question of the exercise of the right of eminent domain (City of Kirksville v. Hines, 285 Mo. l. c. 240), and that the Commission has no jurisdiction over the incidental damages occasioned by the exercise of the power of eminent domain. [State ex rel. Wabash Railway v. Commission, 306 Mo. l. c. 181.] It is true the Public Service Commission cannot exercise the power of eminent domain, or award damages, but we cannot see the relevancy of those decisions to the question before us. There was here no question of exercise of the power of eminent domain; but, of exercise of the police power, in the interest of public safety, and the immediate question is that of the power of the Public Service Commission to order that to be done, which the court is asked to do in the exercise of its power as a court of equity.

We cannot hold that the Public Service Commission did not, and does not have, power to correct its own error, the result of inadvertence, or failure of the parties to invoke its action in respect to a matter materially connected with the subject over which it is given exclusive power. It cannot order the abatement of a nuisance, as such, because that is a judicial act; but, since it can require the construction of the overhead crossing it can require the correction of a defect in the interest of public safety. In this instance the error, or defect, was known to the party here complaining at or about the time the order was made, and long before construction was begun. It was for the Public Service Commission, being duly advised, to solve the problem as to what would constitute adequate drainage, as applicable to the question of public safety, and the respective, reasonable rights of the parties immediately concerned—the railway company, and the State through its agency the Highway Commission.

In State ex inf. v. Kansas City Gas Co., 254 Mo. 515, it was sought by mandamus to compel the Gas Company to perform a certain service in accordance with the terms of its franchise. The suit was brought a short time after the passage of the Public Service Commission Act. This court refused to go into the facts, and exercise its power, on the ground that the question was one to be presented in the first instance to the Public Service Commission. It was said at page 541: "He who reads that act and does not see a complete rounded scheme for dealing with the business of public utilities at every spot where the shoe pinches the public or the utility, reads it to little purpose. He who reads it and does not see that the yearning of the lawmaker was to have the courts trust the

Commission in the first instance to solve such business problems, as those presented in this case, reads it to still less purpose." See also, City of Cape Girardeau v. St. Louis-San Francisco Ry., 267 S. W. 602. In that case the city sought by mandatory injunction to compel the railway company to maintain shops within the city in obedience to its obligation under a franchise ordinance. It was held that the exclusive power to determine the question was in the Public Service Commission, its determination being subject to review by the courts.

In Chicago Railroad v. Railroad Commission, 175 Ind. 630, the Indiana court, speaking to the rule which we think must govern in this case, said at page 637: "Injunctions will not be granted where there is an adequate legal remedy. Where the Commission has power to grant relief, application therefor must be made to it." Citation was made to previous decisions of that court and of the Supreme Court of the United States. The ruling is cited with approval in Vandalia Railroad Co. v. Public Service Commission of Indiana, 242 U. S. 1. c. 260.

In Terminal Railroad Assn. v. United States, 266 U. S. 17, speaking of the application of the rule which we think must be enforced here applicable in cases requiring action in the first instance by a regulatory commission the court said at page 31: "It is well settled as a general rule that the question of the reasonableness of rates or of divisions of joint rates will not be considered by the courts before application has been made to the Commission."

The relief sought here under the mandatory injunction is precisely of the character of relief which could have been granted by the Public Service Commission. On the grounds foregoing, we are of the opinion that the plaintiff in this case had an adequate remedy at law, to procure adequate drainage to prevent injury and consequent danger. The Public Service Commission had the power, in the interest of public safety, to determine what provisions for drainage were necessary, and to prescribe conditions accordingly, after hearing both parties, and availing itself of the advice of its own experts, and its order is subject to review.

The plaintiff's suit is one for injunctive relief, the abatement of the alleged nuisance, caused by lack of proper provision for drainage, an alleged existing condition; and for compensation, by way of recovery of damages alleged to have been "already sustained by reason of such nuisance." [Geltz v. Amsden, 125 Mo. App. 592.] Taking jurisdiction as a court of equity to grant the main relief asked, the court, upon granting that relief, and incident thereto, gave judgment for damages for the injury already sustained. Under the conclusion we have reached, and heretofore stated, the plaintiff had an adequate remedy at law for the relief asked in equity.

This remedy was open to the plaintiff in the very proceeding resulting in the order for the construction of the overhead crossing, or in a supplemental proceeding, and could have been given by the Public Service Commission as the body having exclusive power to determine, in the first instance, not only the necessity for construction of such crossing in the interest of public safety, but also to prescribe the manner of its installation, and to apportion the cost between the parties. This suit for injunctive relief and for abatement by the defendant Highway Commission of the condition complained of, resulted from the denial of the plaintiff of any liability, for any of the expense incident to making provision for drainage. Whether, and to what extent, if any, the plaintiff was free of any liability and apportionment of cost of construction attributable to making provision for proper drainage, was a question to be determined by the Public Service Commission in the first instance, and is of no consequence here, and this is mentioned, not as controlling of the question whether the plaintiff was entitled to recover damages, but in its relation to the act of the court in granting the mandatory injunction against the defendant Highway Commission, the result being a requirement that one of the parties make the provision for drainage, at its own cost and in its own way; and not, that the provision for drainage be made in accordance with plans to be approved by the Public Service Commission, their sufficiency determined upon a hearing, and the cost apportioned, if apportionment was found proper and just, and its determination being subject to review. Upon the showing made in this case that the plaintiff had an adequate remedy at law, we think the court should not have proceeded to exercise its equitable jurisdiction. Equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity. [21 C. J. 123, sec. 142; Mansfield v. Monett Bank, 74 Mo. App. 200.]

On the ground foregoing the judgment should be reversed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. *Atwood, P. J., Ragland* and *Gantt, JJ.,* concur; *Frank, J.,* not sitting.