Edward SAPP and Pearl Ozella Sapp,
Plaintiffs-Appellants,

v.

N. R. GARRETT, d/b/a N. R. Garrett City
Quarry, Defendant-Respondent.

No. 22269.

Kansas City Court of Appeals. Missouri.

Oct. 3, 1955.

Orr & Sapp, Carl F. Sapp, Columbia, for appellants.

George A. Spencer, Columbia, for respondent.

BROADDUS, Judge.

This is a suit in equity seeking injunctive relief against the operation of a quarry. The circuit court refused to grant plaintiffs the relief sought and they have appealed.

Defendant is the owner and operator of a rock quarry located on a 176-acre tract of land in Boone County, Missouri, adjacent to the City of Columbia. The city limits follow a road on the west side of the quarry. The quarry has been in operation since 1924. Defendant acquired the land in 1937.

Plaintiffs are husband and wife. They own a lot about 200 feet wide on which their residence is located. The west side of their lot is adjacent to the east side of defendant's land. The east side of their lot adjoins a road known as Creasy Springs Road. Plaintiffs' house built by them in 1947 is not within the city limits of Columbia. Plaintiffs' neighbors directly south and on the same side of the road are Herbert and Helen Phillippe, and directly south of the Phillippes is a residence formerly lived in by Leon and Margaret Sapp. Directly east and across the road from plaintiffs is the residence of Henry Lutes, and east of the Lutes' residence is the residence of George and Naomi Smith.

In connection with the operation of the rock quarry defendant blasts and pulverizes limestone rock for commercial use. The quarry is located on the south 76 acres of defendant's land, and the operation within said quarry involves two sites, one known as the south quarry and one known as the north quarry. The south quarry operation centers around a rock crusher referred to as the south rock crusher, and the north quarry operation centers around a rock crusher referred to as the north rock crusher. The south rock crusher is located one-quarter of a mile from plaintiffs' lot. The north crusher is about 340 feet from plaintiffs' house.

The south rock crusher has been operated by defendant and his predecessors during the entire time of the quarry operation. In 1939 a small rock crusher was installed in the north quarry by the CCC. In 1942 the CCC stopped operating this crusher and sold it to defendant. There is a dispute between the parties as to the operation of the north crusher bought from the CCC after 1942. Plaintiffs testified that it was not being used in 1947 at the time they built their home. Defendant testified that it was. Plaintiffs' evidence was that up until 1952 defendant's blasting operation had been confined to the south quarry. Defendant's evidence was that quarrying began in the north quarry in 1946. In 1953 defendant installed a new crusher in this quarry. It is

not located at the site of the old CCC crusher. However, one of the bins used in the old crusher is used in the new crusher.

Plaintiffs instituted this suit on August 25, 1953, in the circuit court of Boone County. On May 11, 1954, they filed their second amended petition. Count I thereof seeks an injunction, on the theory of private nuisance, praying the court for an order directing the defendant to cease and desist the operation of his rock crushers in such manner as to allow the escape of lime dust therefrom onto plaintiffs' realty; and so as to cause loud, intensive and excessive noise to be expelled therefrom; to cease and desist the use of explosives in such manner as to cause rocks to be blown onto plaintiffs' realty and so as to cause plaintiffs' house to shake and vibrate, and to cease and desist the operation of said quarry at unreasonable hours of the day and night. Count II of plaintiffs' petition was for damages caused to plaintiffs' realty by defendant's blasting. Defendant's answer was a general denial with affirmative defenses of statute of limitations, estoppel, laches, and failure to state a claim upon which relief could be granted.

The case was tried on May 11 and 12, 1954, and was taken under advisement. On the following September 21st, the court found for defendant on Count I of plaintiffs' petition, and further found that Count II stated an action at law and should be tried as such. Plaintiffs filed a motion for new trial or in the alternative to set aside the decree for defendant and enter one for plaintiffs. On November 18, 1954, plaintiffs' motion was overruled and this appeal followed.

Plaintiffs testified that during the year 1952 they noticed for the first time rock falling onto their lot and their home commencing to vibrate following blasts in the quarry; that in 1953, after the installation of the new crusher, they were bothered by lime dust and loud and excessive noise; that cracks commenced to appear in the walls of their home. They stated that one rock fell on their lot in June 1952, and another

one April 7, 1954; that the vibration from the blasts was such as to cause the dishes on shelves in the house to rattle; that on account of the noises it is difficult to carry on a normal conversation. Plaintiffs also testified that defendant operated the crusher on at least two Sundays and Memorial Day, and on one occasion commenced operation at 6:15 in the morning.

Called as a witness by plaintiffs Roy Hendren testified that the blasting caused a cracked window to fall out of his house one-half mile from the quarry. His brother, Ralph Hendren testified that he lived in a trailer adjacent to Roy's house and that when he was confined to bed with his back in a cast the blasting shook and jarred him through the cast.

George and Naomi Smith testified that the blasting shook and vibrated their home; that the noise from the crusher was bad; that dust could be seen coming from the crusher and that it came in their front windows. Henry Lutes testified that the noise from the crusher was bad and that the dust got into his house; that he had found quarry rock on his property, and that the blasts shook and vibrated his house.

Margaret Sapp and Leon Sapp corroborated plaintiffs' testimony as to dust, noise and vibration. Margaret testified that in 1952 a rock fell near where she was standing, and that in 1953 one fell close to one of her children. Leon Sapp is a brother of plaintiff, Edward Sapp. Herbert and Helen Phillippe also corroborated plaintiffs' testimony as to dust, noise and vibration. Herbert Phillippe is a brother-in-law of plaintiff, Edward Sapp.

Ellis Roberts testified that while he was in the employ of the City on the west side of the quarry a rock fell through the roof of a building in which he was working one-fourth mile from the quarry. Many of the witnesses testified and defendant's superintendent admitted that at times defendant or his employees blocked the Creasy Springs Road and asked those residing along that road to go inside their homes for safety's sake. The superintendent stated this was a "precautionary measure, remote."

Among the witnesses appearing for defendant was W. D. Keller, a teacher of geology at the University of Missouri. Professor Keller testified that he visited the area of plaintiffs' home when the wind was in the west, southwest and northwest at about 8 to 12 miles per hour and that there was no visible dust around plaintiffs' home; that "the plant was operating and there was some dust around the plant." He further testified that he was able to converse normally with those present.

Loren Gafke, manager of the Association of Dairy Farmers, testified that his house is about six or eight hundred feet from the south crusher; that he had never been "bothered" by any dust or noise from the crusher; that "I've never been able to feel the vibration of the blasts out there."

Floyd Calvin testified that he lived in a house located on defendant's property and about seven or eight hundred feet north of the north crusher; that he had no complaint about noise from the quarry operation and that "the only time we have dust is when there is a high wind from the south."

L. T. Proctor, who was associated with the Proctor Realty Company, testified that he was in plaintiffs' home when blasting took place; that "I didn't see any dust around the home there but I could see dust over at the quarry"; that when "the explosions went off" he didn't hear any dishes or windows rattle. Mr. Richard N. Long, a former chief of police of the City of Columbia, testified to the same effect.

Harold H. White, whose profession was that of "consulting engineer on explosive vibration effects", testified that he set up a scientific instrument in plaintiffs' house at the time normal explosions were set off in the quarry, and that the vibrations were so slight that under the standards developed over many years the vibration would have to be 80 times that measured by the scientific instrument in order to do any damage to plaintiffs' house; that the vibrations

caused by a person walking across the floor of the house were many times greater than those caused by the explosions.

J. T. Jones, defendant's son-in-law and manager of the quarry, testified that for several years he had been following "the best known safety procedures in the operation of the plant," and "the best known system and equipment for quarrying rock."

John R. McCloskey, a specialist in mine engineering, testified that he worked for the Hercules Powder Company; that it was his job to determine what kind of a pattern and the amount of explosive charge that should be used to get efficient operation in a quarry; that he recommended the pattern that had been followed by defendant in his quarry.

Defendant testified that his investment in the quarry operation was about $164,000, exclusive of trucks and land value, and that it did a gross business of approximately $184,000 annually. On cross-examination Mr. Garrett was asked: "Were you aware that rocks had been thrown on Leon Sapp's place when Leon was living there? A. I immediately discontinued my operation on the east side of the drain when Leon complained of rocks falling on him and we haven't operated there since."

Plaintiffs contend that the court erred in refusing to grant them the relief sought in Count I of their petition.

■ In considering the question it must be kept in mind that the power of the courts to issue an injunction should be exercised with great caution and only where the reasons therefor are clearly established. Putnam v. Coates, 220. Mo.App. 218, 283 S.W. 717; Godefroy Mfg. Co. v. Lady Lennox Co., Mo.App., 134 S.W.2d 140, 146.

■ We have set out the testimony rather fully. As shown it is in sharp conflict. After a careful review of the whole record, we have reached the conclusion that we should defer to the finding of the learned trial chancellor. He saw the witnesses and heard their testimony. He was in a much better position to determine the credibility of the witnesses and the weight and value to be given their testimony than is this court. Certainly there is no basis for saying that his finding is clearly erroneous or against the weight of the evidence. Thus we should not disturb it. Long v. Von Erdmannsdorff, Mo., 111 S.W.2d 37.

Plaintiffs rely mainly upon the cases of Blackford v. Heman Const. Co., 132 Mo. App. 157, 112 S.W. 287, and Lademan v. Lamb Const. Co., Mo.App., 297 S.W. 184. Both of those cases have facts entirely different from those appearing in the instant case. Both dealt with quarrying within a city and in highly developed residential districts. In both cases the evidence disclosed that the plants were not being operated as properly as they could have been with reference to the explosives used. In the case at bar the evidence was that the plant was being operated in the best and most efficient manner possible.

■ Plaintiffs also contend that the court erred in directing that Count II be tried as an action at law. There is no merit in this contention. The rule in this state is well settled that a court of equity does not have jurisdiction to render a judgment for a plaintiff on legal issues in the absence of a finding that some equitable right of the plaintiff has also been violated. Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 217 S.W.2d 473. That same case was decided by the St. Louis Court of Appeals which reviews many cases on the subject and is reported in 206 S.W. 2d 991.

■ In the instant case the court found plaintiffs were not entitled to equitable relief, consequently the issue of damages became a law action and should be tried as such. There was no agreement to waive a jury and submit the issue of damages to the court as in a jury waived case, and we cannot dispose of the issue of damages on this appeal. The court did not err in ordering a separate trial of Count II.

■ Defendant contends that the court should have found for him on Count II.

There is no merit in this contention for the reasons discussed in the preceding paragraph, and for the further reason that defendant did not appeal, and thus is in no position to complain.

The judgment is affirmed. All concur.