William E. BURNETT et al., Respondents,

v.

Fred E. JOHNSON, Appellant.

No. 48325.

Supreme Court of Missouri,

Division No. 1.

Sept. 11, 1961.

No respondent's briefs filed.

Walter A. Raymond and John J. Alder, Kansas City, for appellant.

DALTON, Judge.

This is an action for damages for fraud in connection with certain transactions involving oil leases in Texas and New Mexico. Plaintiffs William E. Burnett and Marceline P. Burnett, husband and wife, instituted the action against defendant to recover $200,000 actual damages and $250,000 punitive damages from defendant. Defendant filed an answer denying the alleged fraud and alleging that, in any event, the plaintiffs suffered no damage. Defendant also alleged that, after a year's experience under the first written contract between the parties, the matters in dispute between the parties were fully compromised and settled and a complete accord and satisfaction ac-complished by a second contract in which the purchase price to plaintiffs was reduced from $300,000 to $200,000. The answer further pleaded laches and equitable estoppel. Joined with the answer, in separate counts, the defendant pleaded four counterclaims. In the first count he realleged certain facts set forth in the answer and pleaded other facts and prayed judgment against plaintiffs for the amount due and unpaid on the balance of the purchase price of the oil leases under the second contract in the sum of $75,000. In the second count defendant realleged the essential facts of Count I and further alleged that plaintiffs had agreed to sign a note and mortgage in the sum of $75,000 covering the balance of the purchase price of the oil leases under the second contract; that such mortgage was to be a lien on plaintiffs' leaseholds and the proceeds thereof; and that plaintiffs had failed to execute such note and mortgage. Defendant prayed for specific performance of such contract and for the establishment of an equitable lien on said leaseholds and the proceeds thereof.

In the third count of defendant's counterclaims he alleged the plaintiffs had agreed to pay their proportionate share of the expense for the usual and ordinary expenses for maintenance, care, operation, and preservation of the leaseholds, including well-cleaning and upkeep; that plaintiffs had violated their agreement and failed to do so, causing a great decrease in the oil production of the leases covered by the contracts, thereby damaging defendant in the sum of $20,000 for which he prayed judgment and affirmative relief.

In Count IV of defendant's counterclaims he reasserted and realleged the essential facts alleged in Count I of his counterclaims and a portion of the allegations of Count III, and further alleged that he could not adequately determine what net amounts plaintiffs had received under the division orders from the production of leaseholds assigned to plaintiffs by defendant without an accounting of the proceeds or returns received and expenses incurred; that the

leasehold interests were subject to a working agreement for a proportionate share of the expenses for the operation and preservation of the leaseholds as shown by the contracts entered into between the parties. Defendant prayed the court for a judgment requiring plaintiffs to make an accounting of all proceeds they had received under the foregoing contracts from the leaseholds in question, for judgment for their proportionate share of the leasehold operation expenses and for a judgment and decree in equity under Counts II, III and IV of defendant's counterclaims.

In answer to the counterclaims plaintiffs admitted the execution of the first contract on October 1, 1955, and the second on October 1, 1956, denied any assignments of interests as alleged in the counterclaims, admitted the refusal to execute the note in the sum of $75,000, and in answer to Count IV alleged that if the defendant would pay plaintiffs the amount of their damage they were ready to account for any proceeds that they might have received by reason of the contracts and would reassign any interest if any interest had been assigned to them. Other allegations were denied. The answer to Count IV further stated that defendant was not entitled to recover under said count "for the reason that it does not state facts sufficient to constitute a cause of action." There is no such allegation in the answer to defendant's Count II.

The cause was set for trial in the Circuit Court of Jackson County at Kansas City on January 13, 1960, and on that date the parties appeared for trial and the following proceedings appear from the record:

"The Court: Proceed whenever you are ready.

"Mr. Owens: If Your Honor please, as to Count I, as to the plaintiffs' petition, it is a suit at law, I don't believe it is a suit in equity, and as to the counterclaim too, Counts I, II, and III, it is a suit at law, and not in equity.

Count IV. And I presume that you gentlemen want to waive a jury?

"Mr. Alder: This is an equity case, Your Honor.

"Mr. Owens: It is not an equity case at all.

\*  \*  \*  \*  \*  \*

"The Court: Well, let me ask counsel for defendant, are you thoroughly satisfied with the record and are you in agreement with the Court that regardless of how this action started out, it is now properly on the equity side of the court?

"Mr. Raymond: That is right. But we have no objection to the plaintiff waiving a jury if he wants to.

"Mr. Owens: Well, no, I want you to waive a jury, if you are going to waive a jury I am not going to waive a jury.

"Mr. Raymond: We are insisting on equity, which is the same thing.

"Mr. Owens: I am not waiving a jury; if you are, that is all right.

"The Court: Plaintiffs wish to preserve their position that this action is not cognizable as a suit in equity?

"Mr. Owens: That is right.

"The Court: Very well. Well, proceed, Mr. Owens, whenever you are ready.

"Mr. Owens: Yes."

Thereafter, plaintiffs proceeded to present their evidence on all issues and the defendant presented his evidence on all issues and the case was taken under advisement. The court thereafter found for defendant and against the plaintiffs on their petition and found for defendant and against both plaintiffs for $75,000 on Count I of defendant's counterclaims and further found against defendant and in favor of

plaintiffs on Counts II, III and IV of defendant's counterclaims. Judgment was entered accordingly. Plaintiff Marceline P. Burnett did not file a motion for new trial.

Defendant filed a motion for new trial on Counts II, III and IV of his counterclaims. Plaintiff William E. Burnett filed a motion for new trial charging, among other matters, that the court erred by denying plaintiffs the right of trial by jury on plaintiffs' petition and Count I of defendant's counterclaims.

The trial court sustained, on the mentioned ground, the motion of plaintiff, William E. Burnett, for a new trial as to the issues presented by plaintiffs' petition and Count I of defendant's counterclaims, entered a new judgment against Marceline P. Burnett alone, set the judgment as to plaintiff William E. Burnett aside and ordered the issues tendered by plaintiffs' petition and by Count I of defendant's counterclaims, as between plaintiff William E. Burnett only and defendant, to be transferred to the jury docket for jury trial.

Defendant has appealed to this Court from the judgments entered against him on Counts II, III and IV of his counterclaims and has also appealed from the order granting plaintiff William E. Burnett a new trial as to the issues tendered by plaintiffs' petition and defendant's Count I of his counterclaims. In this Court the defendant-appellant has made no assignments of error based on the trial court's rulings as to defendant's Counterclaims III and IV, but insists that the trial court erred in granting a new trial to plaintiff William E. Burnett on plaintiffs' petition and defendant's Counterclaim No. I; and that the court erred in finding for plaintiffs on defendant's Counterclaim No. II and complains of the refusal to grant the affirmative equitable relief therein prayed. The transcript on appeal consists of some 726 pages and plaintiff-respondent, William E. Burnett, has not favored us with a brief.

Before proceeding further we must pass upon certain issues which are determinative of the manner in which this cause shall be handled on appeal and what rules govern the method of review. Many reported cases appear to hold that where plaintiff files an action at law and the defendant pleads a defense in equity and asks for affirmative equitable relief, the court may properly treat "the case as one converted by the answer into an equitable proceedings," and some hold that the court may hear and determine the legal issues submitted by the petition, although denying relief in equity. Dunn v. McCoy, 150 Mo. 548, 561, 569, 52 S.W. 21; Betzler & Clark v. James, 227 Mo. 375, 390–392, 126 S.W. 1007.

■ We think the proper rule is well stated in Miller v. St. Louis & K. C. R. Co., 162 Mo. 424, 435, 63 S.W. 85, 87, where the court said:

"When the answer is filed showing an equitable defense and asking equitable relief, the court merely postpones the trial of the issues tendered by the petition until those tendered by the answer are tried; and, if the equitable defense is sustained, and if it covers the whole case, a final judgment is rendered for the defendant, but if the equitable defense is not sustained, the plaintiff's cause of action stands for trial as at law.

"This is the view the circuit judge took of this case, and his view was correct. But, after trying the issues tendered in the answer, and finding the equitable defense not sustained, the court should have only recorded its finding, and withheld its judgment on the same until the rest of the case was tried, and then pronounced judgment on the whole case; for there can be but one final judgment in a case." 63 S.W. 85, 87 (2).

■ Appellant relies upon the well-settled rule that where a court of equity once acquires jurisdiction of a cause it will retain it to do full and complete justice, even though it involves adjudicating mat-

ters of law or rendering a money judgment. Anison v. Rice, Mo.Sup., 282 S.W.2d 497, 502; Johnson v. Blase, Mo.Sup., 322 S.W.2d 759; Louis v. Andrea, Mo.Sup., 338 S.W.2d 96, 104; Godwin v. Graham, 360 Mo. 418, 228 S.W.2d 789; Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549, 553(7, 8). In this case plaintiffs' petition sought only the determination of legal rights under the facts therein stated. It stated a claim for relief at law. But whether the proceeding was for trial at law or in equity depended upon the issues tendered by the pleadings and, in this case Counterclaims II, III and IV set forth affirmative defenses authorizing relief in equity and asked for affirmative equitable relief—relief which only a court of equity could give. St. Joseph Lead Co. v. Fuhrmeister, 353 Mo. 232, 182 S.W.2d 273, 277; Richards v. Earls, 345 Mo. 260, 133 S.W.2d 381, 384. We must and do hold that the case was of equitable cognizance on the date of the trial because defendant's Counterclaims II, III and IV stated facts constituting claims upon which relief could be granted, and because each count asks for affirmative equitable relief. If fully sustained Count No. II would have effectively disposed of plaintiffs' claim as stated in their petition. The cause had been properly transferred to the equity docket for trial and disposition of the equitable issues. Ebbs v. Neff, 325 Mo. 1182, 30 S.W.2d 616, 620. But, in view of the court's conclusions and because of its failure to grant affirmative equitable relief, another rule of law must be considered, to wit: that equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity.

"The rule * * * that, where the equitable jurisdiction of a court is once brought into action in a proper case, the court will retain jurisdiction of the parties and the subject matter in order to do complete justice to all concerned, even in some instances to the extent of enforcing purely legal rights, applies as a general rule only when the court retains the original case in order to grant some substantial equitable relief.

* * * In other words, equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity." 30 C.J.S. Equity § 73, p. 427.

The mentioned rule is supported by many authorities in this state. See Wimer v. Wagner, 323 Mo. 1156, 20 S.W.2d 650, 654, 79 A.L.R. 1231; Endler v. State Bank & Trust Co. of Wellston, 352 Mo. 961, 180 S.W.2d 596, 597; Winning v. Brown, 340 Mo. 178, 100 S.W.2d 303, 306; Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 217 S.W.2d 473, 475; Yellow Mfg. Acceptance Corp. v. American Taxicabs, 344 Mo. 1200, 130 S.W.2d 601, 610; Chicago, R. I. & P. R. Co. v. State Highway Comm., 322 Mo. 419, 17 S.W.2d 535, 541; Sapp v. N. R. Garrett City Quarry, Mo.App., 284 S.W.2d 49, 52(4) and McKinley v. Durbin, Mo.App., 231 S.W.2d 286, 289.

This rule perhaps, in part, accounts for defendant-appellant's insistence that the court erred in not granting the affirmative equitable relief asked by defendant in Counterclaim No. II, to wit: specific enforcement of the alleged settlement contract. However, in finding for defendant on Count I of his counterclaim the court found that, in the month of October, 1956, plaintiff Marceline P. Burnett, acting for herself and for her co-plaintiff, and the defendant entered into said second contract, a copy of which document is attached to plaintiffs' petition, marked Exhibit B, which was intended to and by the construction placed upon it by the parties did in all respects replace and supplant said written agreement of October 1, 1955. The court found that defendant sustained his burden of proof with respect to this count and was entitled to recover judgment against plaintiffs in the sum of seventy-five thousand ($75,000) dollars together with the costs of this action, but, as stated, the court set the judgment aside on the ground heretofore mentioned.

We have seen that the cause was properly transferred to the equity docket for

a hearing of defendant's equitable defenses and his requests for affirmative equitable relief. The trial judge was sitting as a court of equity to hear the equity branches of the case. The plaintiffs were not then entitled to a jury to hear the claim set forth in their petition. Plaintiffs had no right to a jury when the request was made. The trial judge properly ordered the case to proceed, because it was then necessary that the equitable defenses raised by the pleadings be tried and disposed of. Instead of proceeding in this manner the parties, without further objection, proceeded to try all of the issues presented by all of the pleadings, legal or equitable, and the court heard the evidence without the aid of a jury. The court did not err in permitting the parties to do so. The court made no order requiring plaintiffs to present their evidence in support of the allegations of the petition and plaintiffs interposed no objections to defendant's evidence in support of defendant's Counterclaim No. I. There was no request or suggestion that the evidence be limited to equitable issues presented by the counterclaims. In such circumstances the case should be reviewed upon the same theory upon which it was tried. St. Joseph Lead Co. v. Fuhrmeister, supra, 182 S.W.2d 273, 277. In presenting their evidence under the circumstances shown by this record, the plaintiffs waived their right to have the legal issues involved in their petition and in Count No. I of the defendant's counterclaims heard and determined by a jury. The court erred in setting his findings aside on the ground stated. The findings for defendant on plaintiffs' petition and for defendant on Count I of defendant's counterclaim should be reinstated.

■ It is true that plaintiff William E. Burnett in his motion for a new trial complained of numerous matters in addition to the trial court's alleged denial of a jury trial on the legal issues presented by his petition and defendant's Counterclaim No. I, but the rule is that a trial court, in granting a new trial on a specified ground, in effect overrules all other grounds stated

in the motion and, since plaintiff William E. Burnett has not appeared in this Court, there is no contention here that the motion for a new trial should have been sustained on any other ground. Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S.W.2d 610, 611; Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W.2d 333, 335, 8 A.L.R.2d 710.

Since the original findings entered by the court for defendant on plaintiffs' petition and for defendant on Count I of defendant's counterclaims must be reinstated, it is unnecessary to consider appellant's assignments on this appeal that the court's order granting plaintiff William E. Burnett a new trial and ordering the case transferred to the jury docket for a trial is erroneous for other reasons. The reasons assigned are that William E. Burnett's co-plaintiff was his wife and partner in the transactions in question and their petition sought damages for an alleged tort affecting partnership property, and their alleged cause of action was a joint cause of action and not divisible and the finding and judgment adverse to his wife, partner and co-plaintiff being final, the plaintiff William E. Burnett could not maintain an action separately from his wife, partner and co-plaintiff; and that their liability on defendant's counterclaim being joint and not several the final judgment entered against defendant Marceline P. Burnett rendered the subject matter of both the petition and counterclaims. res adjudicata as to defendant William E. Burnett.

There remains for consideration defendant's appeal from the trial court's judgment on defendant's Counterclaim No. II. We must, therefore, review the court's finding on that count denying affirmative equitable relief.

Appellant contends that the trial court erred in entering judgment against defendant on that counterclaim for the reason that defendant is entitled to the affirmative relief therein prayed under the overwhelming weight of the evidence.

As stated, Count II of defendant's counterclaims sought specific performance of an alleged contract to execute and deliver a note and mortgage (on plaintiffs' interests in the oil leases and contracts acquired from defendant) to secure the $75,000 balance of the purchase price of the property, or for an equitable lien thereon for the same purpose. The evidence in this record relating to this particular count is extremely limited. Most of the evidence in the record was intended to support the allegations of plaintiffs' petition or defendant's answer thereto or to support the allegations of Count I of the counterclaims. However, the cause had been transferred to the equity docket on November 6, 1959, because of the affirmative equitable relief asked by defendant in Counts II, III and IV of his counterclaims. In denying defendant the relief asked in these counterclaims, the trial court found that each of these counts were "addressed to the equity side of the Court."

From a careful reading of the entire record, the only evidence in support of Count II of the counterclaims may be summarized as follows: The first contract between defendant Johnson and plaintiff William E. Burnett was dated October 1, 1955. It was in the form of an option contract and provided for a consideration of $300,000 to be paid to defendant for a one-half interest in Johnson's undivided interests in certain leases, oil and gas wells, rentals, royalties, tanks, pumps and equipment and the oil, gas and other minerals produced from the lands described therein. The leases referred to were in Eddy County, New Mexico, and Cooke County, Texas. This agreement further provided that: "Upon acceptance of the option, First Party Agrees to complete the Assignments by proper instruments and the Buyer shall execute a Deed of Trust in the usual form upon said properties as security for the unpaid balance of the purchase price." While the option was accepted, the other provisions mentioned were not complied with.

After serious difficulties arose between the parties to the agreement and plaintiff William E. Burnett was in default in making the payments under the contract, a new contract was entered into in the form of a contract between defendant Johnson and Marceline P. Burnett, wife of William E. Burnett, by which new contract all payments made by William E. Burnett were duly credited and the price of the interests to be acquired was reduced from $300,000 to $200,000 and the undivided one-half of defendant's interest in and to said leases, oil wells, rentals, royalties, machinery and equipment was agreed to be transferred to Marceline P. Burnett, effective as of October 1, 1955, and all necessary division orders, assignments and transfers were agreed to be completed when one-half of the agreed purchase price was paid. This agreement was entered into on December 1, 1956, but by agreement of the parties, it was dated back to the date of the first contract, October 1, 1955. William E. Burnett also signed this agreement, which purportedly was between Johnson and Mrs. Burnett. In this connection, Mrs. Burnett testified that both contracts represented a family venture; that is "a partnership in anything we do"; and that the money paid on the first contract came out of a joint bank account that she and her husband owned.

When this second contract was signed and delivered a total of $125,000 was shown as paid, with $75,000 unpaid, but due and payable at the rate of $300 per month beginning December 1, 1956. No such payments were ever made. This contract contained no provision with reference to the execution of a note or deed of trust for the unpaid purchase price, but it did contain the following provision upon which appellant, in part, relies:

"In the event Second Party should sell her interest in said leases and properties or in the oil and gas income therefrom or should sell any portion thereof, Second Party shall apply one half of the selling price thereof in payment of this balance except

that by mutual agreement of the parties, all or any part of said purchase price may be applied by the parties to develop and drill said properties for oil or gas and equip any oil or gas wells produced thereon."

In its entry of judgment against Marceline P. Burnett on the issues presented by her petition and by defendant's Counterclaim No. I the trial court found that: "In the month of October 1956 plaintiff Marceline P. Burnett, acting for herself and for her co-plaintiff, and the defendant entered into said second contract, * * * which was intended to and by the construction placed upon it by the parties did in all respects replace and supplant said written agreement of October 1, 1955. By the terms of said second contract, defendant sold assigned, transferred and conveyed to plaintiff Marceline P. Burnett an undivided one-half of his interest in and to the same oil and gas leases described in the original written agreement. The interest conveyed by said second contract was further described as 'oil and gas leases all as shown by documents duly recorded as provided by law' and known and described as said MacKenzie and Solomon leases." The same finding appeared in the first judgment entered and the evidence fully supported the finding (and see allegations, supra, in defendant's answer to plaintiffs' petition).

Subsequent to the execution of this second contract the record shows that defendant executed numerous assignments to Mrs. Burnett for one-half of his fractional interests in various working interests in leases and joined with Mrs. Burnett in division orders for the division of income from oil and gas produced on various properties, and defendant caused said assignments and orders to be recorded or filed, but Mrs. Burnett advanced no money for further drilling or development of the properties or for the improvement of existing wells. She received the oil-run payments, but made no payments on the balance of the purchase price. In this situation defendant in Count II of his counterclaims sought to subject her acquired interests to a mortgage or equitable lien to secure the unpaid portion of the purchase price.

Appellant in the argument portion of his brief in this Court summarizes the oral evidence on the mentioned issue, as follows: "It was the understanding of defendant and his attorney, Mr. Hall, that Mrs. Burnett would execute a note and mortgage to secure the balance of the purchase price and Hall prepared and forwarded such instruments to her for execution. Plaintiffs denied any agreement to give any note and mortgage and Mrs. Burnett refused to sign either instrument."

While the record does show that Hall prepared such a note and mortgage and forwarded the same to Mrs. Burnett to be executed, she neglected and refused to sign either instrument. We find no testimony in the record by either defendant or his attorney that Mrs. Burnett orally or in writing agreed to execute any such note or mortgage. Defendant Johnson did testify:

"Q. Now, on the $75,000, how was that to be evidenced, if you know? A. Well, that was to be on a contract—

"Q. And any note or mortgage? A. Note and mortgage, that was strictly up to Mr. Hall, my attorney."

Witness Hall testified:

"Q. —you told the Court also that this contract, which is Exhibit B, between Mrs. Burnett and Mr. Johnson, provided that a note be signed and a deed of trust be given. A. I didn't say that the contract provided for that. I said that that was my—the first contract provides specifically for a deed of trust and note for any unpaid balance, and I—in drawing it I am sure that I drew a note for the $75,000, and a deed of trust to secure it. But apparently it was never signed."

It is appellant's theory that by entering into the second contract defendant did not lose "his priority lien rights to secure the balance of the purchase price"; that even

if the second contract be considered by itself separate from the first contract the second contract shows a clear intent to "appropriate the specific property to the discharge of a particular debt"; that the documentary evidence and oral testimony support an inference "that the parties intended to create a security upon specific property and defendant is accordingly entitled to an equitable lien"; that defendant's right to an equitable lien on the property under the first contract "was not lost for want of more definite language in the second contract"; that the intention of the parties to appropriate the oil leases to the payment of the balance of the purchase price "arises by a necessary implication from the terms of the second contract requiring the application of a part of any sales price to payment of the balance of the purchase price"; and that the evidence presented "entitles defendant to a decree specifically enforcing plaintiffs' obligation to execute a note and mortgage to secure the indebtedness of the purchase price."

We find no evidence in this record to support a decree in equity granting the relief requested by defendant in Count II of his counterclaims. Further, we have carefully examined each of the fourteen cases cited in support of this contention and find no case that would support the granting of the affirmative equitable relief requested in the count on this record either for a note and mortgage or for an equitable lien as defined in the authorities relied on by appellant. Miller v. Heisler, Mo.App., 187 S.W.2d 485, 491(10, 11); Sidney Smith, Inc., v. Steinberg, Mo.App., 280 S.W.2d 696, 703–4(4–6) (11) (13).

The order granting a new trial to plaintiff William E. Burnett on his petition and on Count I of defendant's counterclaims is reversed and the cause remanded with directions to re-enter the original findings and judgment thereon for defendant.

The judgment as to Counterclaims II, III and IV is affirmed.

All concur.